Rickey WILLIAMS *v.* STATE of Arkansas

CA CR 82-97 · 645 S.W.2d 697

Court of Appeals of Arkansas
Opinion delivered February 2, 1983

152

*James M. Simpson,* for appellant.

*Steve Clark,* Atty. Gen., by: *Arnold M. Jochums,* Asst. Atty. Gen., for appellee.

MELVIN MAYFIELD, Chief Judge. Rickey Williams and Katherine Rogers, jointly, were charged with forgery and theft by receiving in connection with a welfare check. Rogers pled guilty and was sentenced. Williams went to trial and a jury found him guilty. A subpoena was issued for her to testify at his trial but she was not served and this appeal involves the testimony of a witness who was allowed to repeat statements which he said she made.

A witness named Rowe testified that he was in a cafe-poolhall when Williams and Rogers came in and Williams asked if Rowe would take them to cash a check. Rowe agreed and the three of them got in his pickup truck and went to a Safeway store. Rogers went into the store and there was evidence that she tried to cash a check, that the store employee became suspicious, and that Rogers left while the employee was showing the check to the store manager.

Rogers got back into the pickup truck with Rowe and Williams and they told Rowe to drive to Browning's Liquor Store. The Safeway store manager followed the truck and pulled it over about the time it got to the liquor store. He testified that the occupants of the pickup got out and he talked to Rowe and Rogers at the back of the truck while the appellant stood at the front. During this conversation, Rogers told the store manager that Williams had "put her up" to cashing the check because it was in a female's name and he knew he couldn't cash it and that he was going to give her half the money. At this point, according to the store manager, Williams walked to the back of the truck and when

the manager asked him about what Rogers had said Williams denied knowing anything about the check.

The store manager asked someone in the liquor store to call the police and a policeman came out, talked to everyone, and placed Williams and Rogers under arrest.

At the trial, counsel for Williams objected to the store manager's repeating what Rogers had told him during their conversation at the back of the pickup truck. The trial court overruled the objection on the grounds that the evidence was admissible under Uniform Evidence Rule 801 (d) (2) (v), Ark. Stat. Ann. § 28-1001 (Repl. 1979), as "a statement made by a coconspirator of a party during the course and in furtherance of the conspiracy."

Appellant first contends that the statement was not admissible because it was not connected by other evidence which established a conspiracy independently of the statement. *Patterson* v. *State,* 267 Ark. 436, 591 S.W.2d 356 (1979). We think, however, that this requirement was fully satisfied. In *Smithey* v. *State,* 269 Ark. 538, 602 S.W.2d 676 (1980), the court said that admissions and statements of a codefendant are admissible as against the other even in the absence of a conspiracy charge "where there is independent evidence of a concert of action," and that the rule is not confined to those who are codefendants at the same trial. Here, without considering any statement or admission of Rogers, we have evidence that Williams asked Rowe to take them to cash a check; that they rode together to the Safeway store where Rogers tried to cash a check made to a lady who testified she never received the check and never signed it; and when the clerk in the store became suspicious, Rogers left the check, got back in the pickup with Williams, and they left together. We find that evidence as strong as the evidence found sufficient in *Jackson* v. *State,* 267 Ark. 891, 591 S.W.2d 685 (Ark. App. 1979).

We also have no problem with the requirement that Rogers' statements must be made during the course of the conspiracy in order to be admissible against her cocon-

spirator, but we cannot agree that her statements were made in *furtherance* of the conspiracy.

The necessity of the "in furtherance" requirement is made quite clear by the history of our Uniform Evidence Rule 801 (d) (2) (v). In a law review article by Richard H. Field, Story Professor of Law Emeritus, Harvard Law School, *A Code of Evidence for Arkansas?*, 29 Ark.L.Rev. 1 (1975), it is pointed out that the Uniform Rules of Evidence were "grounded" upon the Federal Rules of Evidence and, in fact, our Rule 801 (d) (2) (v) is exactly the same as Federal Rule of Evidence 801 (d) (2) (E).

In *Krulewitch* v. *United States*, 336 U.S. 440, 443 (1949), the court said:

This prerequisite to admissibility, that hearsay statements by some conspirators to be admissible against others must be made in furtherance of the conspiracy charged, has been scrupulously observed by federal courts.

And in *Wong Sun* v. *United States*, 371 U.S. 471, 490 (1963), the court said it had "consistently refused to broaden that very narrow exception to the traditional hearsay rule which admits statements of a codefendant made in furtherance of a conspiracy or joint undertaking."

The Federal Rules of Evidence became effective July 1, 1975. See the enacting clause of Public Law 93-595, 88 Stat. 1929 (1974). The notes of the Advisory Committee in regard to Federal Rule 801 (d) (2) (E) state that "the limitation upon the admissibility of statements of coconspirators to those made 'during the course and in furtherance of the conspiracy' is in the accepted pattern" and the *Krulewitch* and *Wong Sun* cases are cited. See Federal Rule of Evidence 801, 28 U.S.C.A. 531. And in the case of *United States* v. *Harris*, 546 F.2d 234, 237 (8th Cir. 1976), the court said:

Before the present Rule 801 (d) (2) (E) was promulgated, Senator John L. McClellan of Arkansas strenuously advocated the abolishment of the "in further-

ance of" requirement, substituting in its place a more relaxed standard and thereby enlarging the existing hearsay exception. This suggestion was rejected, however, by Congress.

The reason for the "in furtherance" requirement is explained in 4 Weinstein & Berger, *Weinstein's Evidence,* 801-171 (1981), as the desire to strike a balance between the need to admit statements of coconspirators and the need to protect the accused against idle chatter of criminal partners. At any event, the requirement is clear — although whether a statement meets the requirement may not be.

In *United States* v. *Harris, supra,* the court said the statements involved could be viewed in two different lights, but found it unnecessary to make the determination. The *Krulewitch* case, *supra,* was relied upon by this court in *Smith* v. *State,* 6 Ark. App. 228, 640 S.W.2d 805 (1982), where we said it held that this exception to the hearsay rule does not "extend to concerted action to conceal the crime." In *United States* v. *Moore,* 522 F.2d 1068 (9th Cir. 1975), a "casual admission of culpability" was found in no way to have furthered the conspiracy. And in *United States* v. *Wilson,* 490 F.Supp. 713 (E.D. Mich. 1980), *aff'd,* 639 F.2d 314 (6th Cir. 1981), an admission to a company official was held not in furtherance of a conspiracy by employees to defraud the company because the admission was merely telling the official what had occurred and there was no attempt to draw him into the conspiracy.

From the above, we have to conclude that Rogers' statements in the instant case were not made in furtherance of the conspiracy. The *Krulewitch* case, *supra,* cited the case of *Hooper* v. *State,* 187 Ark. 88, 58 S.W.2d 434 (1933), as a case not totally in support of the *Krulewitch* view, but *Hooper* held that the conspiracy there involved did not end until the money taken in a robbery had been divided among the robbers. That is certainly a different situation from the one at bar. There are other Arkansas cases holding that the acts of the participants in an effort to escape are part of the continuous scheme or conspiracy, *e.g., Johnson* v. *State,* 252 Ark. 1113, 482 S.W.2d 600 (1972). But *Johnson* and the cases

it cites are situations where persons sought to escape from the crime scene and used someone as a shield in hopes that law enforcement officers would not shoot. Again, that is not the situation here.

In this case we see no way Rogers' statements that the appellant had "put her up" to cashing the check could help further the attempt to cash the check, divide the proceeds, conceal the crime, help the escape, or enlist the store manager in the conspiracy.

We reverse and remand for a new trial.