Jerry Lee WARD *v.* STATE of Arkansas

CA CR 90-319 816 S.W.2d 173

Court of Appeals of Arkansas
Division I
Opinion delivered September 11, 1991

150

*William R. Simpson, Jr.,* Public Defender, *Llewellyn J. Marczuk,* Deputy Public Defender, by: *Bret Qualls,* Deputy Public Defender, for appellant.

*Winston Bryant,* Att'y Gen., by: *Pamela Rumpz,* Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Chief Judge. Jerry Lee Ward appeals from his conviction of criminal attempt to commit burglary for which he was sentenced as a habitual offender to a term of twenty years in the Arkansas Department of Correction. He contends that the evidence was insufficient to support his conviction and that the trial court erred in permitting the introduction of physical evidence found near the scene of the crime. We find no error and affirm.

Where the sufficiency of the evidence is challenged on appeal of a criminal conviction, our rule requires a review of that issue prior to consideration of asserted trial error. This rule is based on double jeopardy considerations, which would preclude a second trial where a conviction is reversed for insufficient evidence. *Harris* v. *State,* 284 Ark. 247, 681 S.W.2d 334 (1984). On appeal, this court views the evidence and all permissible inferences deducible therefrom in the light most favorable to the State, and will affirm if there is any substantial evidence to support the findings of the factfinder. *Sullivan* v. *State,* 32 Ark. App. 124, 798 S.W.2d 110 (1990); *Harris* v. *State,* 15 Ark. App. 58, 689 S.W.2d 353 (1985). In making this determination, we do not weigh evidence on one side against the other but simply determine whether the evidence presented by the State will support the

verdict. *Ricketts* v. *State*, 292 Ark. 256, 729 S.W.2d 400 (1987).

 Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without requiring one to resort to speculation or conjecture. *Booth* v. *State,* 26 Ark. App. 115, 761 S.W.2d 607 (1989). The fact that evidence is circumstantial does not render it insubstantial. *Sweat* v. *State*, 25 Ark. App. 60, 752 S.W.2d 49 (1988). When circumstantial evidence alone is relied upon, it must indicate the accused's guilt and exclude every other reasonable hypothesis. It is only when the circumstantial evidence leaves the jury solely to speculation and conjecture that it is insufficient as a matter of law. *Cristee* v. *State* 25 Ark. App. 303, 757 S.W.2d 565 (1988). The action of an accused fleeing from the scene of a crime is a circumstance that may be considered with other evidence in determining guilt. *Murphy* v. *State*, 255 Ark. 90, 498 S.W.2d 884 (1973); *Cristee* v. *State, supra.*

Arkansas Code Annotated § 5-3-201(a)(2) (1987) provides that a person attempts to commit an offense if he purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense, whether or not the attendant circumstances are as he believes them to be. A person commits burglary if he enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201 (1987).

Here, the evidence viewed in the light most favorable to the State discloses that Lafayette Champagne lived across the street from the Sonic Drive-In on Highway 161 in North Little Rock. Champagne testified that he is a "volunteer neighborhood-watcher" and that on February 19, 1990, at approximately 3:00 a.m., he saw appellant walking in his (Champagne's) neighborhood, in an "alley" that runs between a pawn shop and an apartment building. Champagne stated that appellant stopped and looked inside the pawn shop, but made no effort to enter the building. Champagne then observed a white pickup truck come out of the same alley and pass by appellant. Appellant waved at the driver who waved back at appellant as if they were communicating in some way. Champagne testified that he observed

appellant carrying a set of keys and "something long" in his hand. Within minutes, the white pickup truck again passed by, and appellant and the driver waved to each other. Champagne testified that appellant then went to the front of the Sonic Drive-In and stood there for several minutes looking inside. Suspicious that appellant was about to break into the Sonic, Champagne called the police.

Champagne testified that the area around the Sonic was well-lighted and that he could see clearly from his vantage point. He stated that he saw appellant put a key into the door lock, shake the door, and then proceed to walk around to the back of the building. At about that time, a police car arrived. When appellant saw the lights on the car, he crouched down, "crawled like a jackrabbit," and jumped over a chain-link fence into the yard of the residence next to the Sonic, where he was apprehended by the police.

Officer Scott Hasselbach testified that he was in the immediate area when he got a call regarding suspicious activity at the Sonic and was there "in a matter of seconds." He stated that Officer Laurie Robinson arrived shortly thereafter. Hasselbach first saw appellant running toward a chain-link fence separating the Sonic property from the backyard of an adjacent private residence. He and Officer Robinson apprehended appellant in the backyard of that residence. Officer Hasselbach testified that the area was well-lighted and that he did not observe appellant carrying anything in his hands.

After apprehending appellant, Officer Hasselbach found a white pickup truck matching the description given by Champagne parked at an apartment building "just to the south of the pawn shop and the Sonic." The officer testified that he determined from the heat of the engine and the absence of dew on the hood that the pickup truck had been driven a short time before he found it. Appellant's automobile was found at the same location. There was evidence that appellant made a statement to Officer Eugene Tyree that, on the night of his arrest, appellant had gone for a walk and was sitting in the driveway of the Sonic when he saw some headlights and ran. Appellant told the officer that he was walking from a friend's house located on Taylor Street. Appellant advised that the white pickup truck, which had been

observed in the area, belonged to his friend who lived on Taylor Street. Officer Tyree testified without objection that Champagne told him that he had seen appellant exit the white pickup truck "just prior to him prowling around the area."

Flora Mae Whitlock testified that she lived next door to the Sonic Drive-In but was unaware of the events of February 19 until a few days later. She stated that the first time she went into her backyard after that date she found a screwdriver, chisel, hammer, and pair of black socks near the fence adjacent to the Sonic Drive-In. She testified that the items brought to the courtroom that morning by police officers were the ones that she had found in her yard, even though she could not testify to any identifying marks.

■ Appellant makes two sufficiency arguments. First, he argues that there was insufficient evidence that he took a substantial step toward unlawfully entering the building. We disagree. There was evidence that appellant made an attempt to enter the Sonic by the use of a key and that he had no permission to make such an entry. We conclude that this evidence is sufficient to support the finding that appellant took a substantial step toward committing the offense of burglary.

Second, appellant argues that there was insufficient evidence that he had attempted to enter the Sonic for the purpose of committing an offense punishable by imprisonment. We cannot agree.

In *Grays v. State*, 264 Ark. 564, 572 S.W.2d 847 (1978), the supreme court stated that "the fundamental theory, in absence of other intent or explanation for breaking or entering an occupiable structure at night, is that the usual object or purpose of burglarizing an occupiable structure at night is theft." 264 Ark. at 568, 572 S.W.2d at 849. There, the court upheld a burglary conviction where the appellant had illegally entered a seed company when it was not open for business and fled from the premises when he was discovered by the police. The court concluded that, "even when we consider the facts in the light most favorable to appellant, we can find no rational basis for a verdict acquitting him of the offense of burglary." 264 Ark. at 568, 572 S.W.2d at 849.

In *Norton v. State*, 271 Ark. 451, 609 S.W.2d 1 (1988), the

supreme court stated that due process requires that the prosecution prove beyond a reasonable doubt every element of the crime charged. As specific criminal intent and illegal entry are both elements of the crime of burglary, the existence of intent may not be presumed from the mere showing of the illegal entry. In Norton, the court reversed a burglary conviction because there was no evidence from which a jury could find that the appellant had entered the building for an illegal purpose, noting that "[a]t most, the evidence revealed that appellant was standing inside the doorway of an office building which he had illegally entered and from which nothing was taken, speaking to his friends passing by." 271 Ark. at 454, 609 S.W.2d at 3. The court recognized its decision in *Grays,* pointing out that in *Grays,* unlike in *Norton,* the appellant fled the scene when he was discovered by the police.

In *Cristee* v. *State, supra,* a burglar alarm at a lumber company was activated and the appellant was observed trying to climb over the fence that enclosed the lumberyard. When a witness yelled at him, the appellant started running but was apprehended by the police shortly thereafter. The appellant was observed wearing gloves and carrying a crowbar just prior to his arrest and a large hole was discovered in the side of the lumber company office building the next morning. The appellant was convicted of attempted burglary and the main issue on appeal was whether the evidence was sufficient to support a finding that the appellant had attempted to enter the lumber company's office building with the intent to commit an offense punishable by imprisonment. Affirming the conviction, this court recognized the proof requirements outlined in *Norton* and the fact that, as in *Grays,* the accused fled from the scene. Following *Grays,* we found no rational basis for the appellant in *Cristee* to enter the building during the night that would warrant acquittal.

Here, even when we consider the facts in the light most favorable to appellant, we can find no rational basis for a verdict acquitting appellant of the offense of burglary. Appellant attempted to enter the Sonic at 3:00 a.m. As this was in the middle of the night when the Sonic was closed to the public, appellant could not have been seeking to enter the building for the purpose of purchasing food. It cannot be said that his purpose was to seek a place to make a telephone call or to sleep as there is evidence from which the jury could find that appellant had an acquaintance in

the area with whom he had been seen only a short time prior to his arrest. Nor was there any evidence that the weather was such that would require him to seek shelter. It is undisputed that appellant fled the scene immediately upon the arrival of the police. When all of the facts and circumstances in this case are considered, we cannot conclude that there was any reasonable basis for the attempted illegal entry other than for the purpose of committing a theft therein or that the evidence is insufficient to support that conviction.

Appellant next contends that the trial court erred in admitting into evidence the hammer, screwdriver, chisel, and pair of socks that were found by Ms. Whitlock. He argues that because these items were not discovered until several days after the incident, there was no evidence of any attempted entry other than with a key, and the tools were found in a high-crime area, their probative value is greatly outweighed by their prejudicial effect, and that they should have been excluded under Ark. R. Evid. 403. We find no error.

■ "Relevant evidence" is any evidence having the tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Flowers* v. *State*, 30 Ark. App. 204, 785 S.W.2d 242 (1990); Ark. R. Evid. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Ark. R. Evid. 403. Determining whether the probative value of the evidence is outweighed by its prejudicial impact is within the sound discretion of the trial court, and we will not reverse its decision absent a showing of an abuse of that discretion. *Flowers* v. *State, supra; Miller* v. *State,* 19 Ark. App. 36, 715 S.W.2d 885 (1986).

■ Here, there was evidence that appellant scaled a chain-link fence adjacent to the Sonic and was apprehended within that enclosure, and that the items in question were found along a chain-link fence adjacent to the Sonic. Officer Tyree testified that appellant was arrested in the backyard of 2116 Highway 161, the address of Ms. Whitlock's residence. Although Officer Robinson testified that appellant was arrested at 2122 Highway 161, there was evidence that Officer Hasselbach was standing on the other

side of a chain-link fence, in a neighboring backyard, when he apprehended appellant. Although the record indicates that appellant attempted to enter the Sonic with a key, as opposed to a tool such as one of those found by Ms. Whitlock, there was evidence that appellant was carrying a long object just prior to his flight from the police. Although the items were not discovered by Ms. Whitlock until "a few" days after the incident, the record indicates that she lived at a private residence not open to the general public and that she discovered the items the first time that she went into her backyard after the incident. When all of these facts and circumstances are considered, we cannot conclude that the trial judge abused his discretion in admitting the items into evidence for the consideration of the jury.

Affirmed.

COOPER and ROGERS, JJ., agree.