Randy LEACH *v.* STATE of Arkansas

CA CR 91-169                        831 S.W.2d 615

Court of Appeals of Arkansas
Division I
Opinion delivered May 13, 1992
[Rehearing denied June 17, 1992.]

*Callis Childs*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for the appellee.

JOHN E. JENNINGS, Judge. Appellant, Randy D. Leach, was convicted of conspiracy to commit aggravated robbery and received a six year sentence and a $5,000.00 fine. Leach raises eighteen points on appeal, two of which require reversal. Pursuant to *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984), before we reverse and remand because of trial error we must consider whether the evidence is sufficient to sustain the conviction. Of the other issues raised we address only those which are

likely to arise again on retrial.

Some background is in order. On November 7, 1988, Conway Police Officer Ray Noblitt was killed when he investigated what appeared to be a theft of a flatbed trailer in progress. An investigation and manhunt resulted a few days later in the arrest of Kenneth Ray Clements, a felon, in connection with the murder. Pursuant to the investigation, police interviewed Denise Clements, wife of Kenneth, and her sister, Julie Nathe. Investigators then interviewed Conway Police Officer R.L. "Dickie" McMillen and later Leach, who was also a Conway police officer. Within a week of the murder both McMillen and Leach had been placed under arrest on suspicion of conspiracy to commit theft of property. A grand jury was impaneled to investigate the death of Noblitt. The grand jury handed down indictments charging Kenneth Clements with capital felony murder and multiple counts of theft of property, conspiracy to commit burglary, conspiracy to commit aggravated robbery, and several other criminal charges; Dickie McMillen with being an accomplice to capital felony murder, two counts of conspiracy to commit aggravated robbery, conspiracy to commit theft of property, and two counts of conspiracy to commit burglary; and Leach with conspiracy to commit aggravated robbery and conspiracy to commit burglary. Both McMillen and Leach subsequently resigned from the police force. In the case at bar, Leach was convicted of conspiring with Kenneth Clements and Dickie McMillen to commit aggravated robbery of a courier for Wal-Mart when the courier was to deliver night deposits to a bank.

## 1. SUFFICIENCY OF THE EVIDENCE

Leach first argues that the evidence was insufficient to sustain his conviction for conspiracy to commit armed robbery. When the sufficiency of the evidence is challenged on appeal of a criminal conviction, we review the evidence, including any evidence which may have been erroneously admitted, in the light most favorable to the State and affirm if there is substantial evidence to support the verdict. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984); *Williams* v. *State*, 29 Ark. App. 61, 781 S.W.2d 37 (1989). Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without

requiring one to resort to speculation or conjecture. *Ward* v. *State*, 35 Ark. App. 148, 816 S.W.2d 173 (1991). The fact that evidence is circumstantial does not render it insubstantial as the law makes no distinction between direct evidence of a fact and circumstances from which it may be inferred. *Ryan* v. *State*, 30 Ark. App. 196, 786 S.W.2d 835 (1990).

At trial, Lieutenant Doug Williams of the Arkansas State Police testified that in November of 1988 he was involved in an investigation of the Conway Police Department. In the course of that investigation he interviewed Leach, and a transcription of that interview was prepared. Sergeant J.R. Howard of the Arkansas State Police testified that he was present at the taking of Leach's statement. Howard read into the record the transcription of Leach's statement. Leach's statement described his relationship and contacts with Dickie McMillen and Kenneth Ray Clements.

In this statement, Leach said that McMillen and Clements picked him up one afternoon to ride over to the house of one Nolan in order to look at some hunting dogs. During that ride there was a discussion of farm equipment, and Leach was led to believe that Clements had stolen a tractor. He stated that, on another occasion, he and McMillen had discussed the possibility of robbing a Wal-Mart courier. McMillen and Clements were to work it out so that on an evening when Leach was escorting the courier to the bank, Clements would "just come up and snatch the money and run." Leach was to "stall along and make it look good." He further stated:

> Shots were talked about. I told them I didn't want anybody shooting at me. Uh, I can't remember anything was said about me firing a shot. Talked about, you know, if I took off after them or something, you know, run at them, run into one of those teller machines or something, damage my car so I couldn't pursue him.

Denise Clements, Kenneth Clements's wife, testified with regard to the planned robbery of the Wal-Mart courier that "Kenneth was supposed to follow the courier truck and pull it over at some point or at the bank, rob the bank, and, uh, was to get away with the money and split it with the two other police officers." It is clear that the basis for this testimony was

statements made by her husband to her. She said that Clements told her that he had followed the courier to find the route and time. She stated that Clements never left the house without a gun, "no matter what he did." She testified that she was present at one meeting between Clements and McMillen where she sat in Clements's truck while he rode around with McMillen in McMillen's truck. She said that McMillen often called, and that he used an alias of "Frank." She testified that McMillen sold Clements a truck, that McMillen visited the house, and that Clements and McMillen had known each other for years.

■ Leach argues that there was no evidence that the men conspired to commit armed robbery, or that he or the co-conspirators agreed or planned that they would be armed with a deadly weapon or would represent by words or conduct that they were so armed. From appellant's statement and the testimony of Denise Clements, we believe there was substantial evidence from which the jury could find Leach guilty of conspiracy to commit armed robbery.

## 2. THE "IN FURTHERANCE OF" REQUIREMENT

■ Appellant argues that the trial court erred in allowing statements attributed to Kenneth Clements to be admitted through the testimony of Denise Clements. The statements were admitted under Ark. R. Evid. 801(d)(2)(v) which provides that a statement is not hearsay if the statement is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. Appellant argues, as he did below, that there was no evidence to indicate that any of the statements made by Kenneth Clements to his wife Denise were made "in furtherance of the conspiracy," and thus the statements do not fall within the Rule. The witness herself characterized her husband as a liar, but added that "when it came to boasting and bragging about things he had and was planning on doing, he was also very good at that." Appellant argues that there is no proof that Kenneth Clements's boasting and bragging to his wife in any way furthered the objective of the conspiracy to rob the Wal-Mart courier. He relies on *United States* v. *Eubanks*, 591 F.2d 513 (9th Cir. 1979), applying Fed. R. Evid. 801(d)(2)(E), which is identical to the Arkanas rule. In *Eubanks*, Baca, the common-law wife of the deceased conspirator Gonzales, was allowed to

testify to statements made by Gonzales about his involvement in a conspiracy to distribute heroin. The Ninth Circuit Court of Appeals reversed, finding that not all statements made by co-conspirators can be considered to have been made in furtherance of the conspiracy. The Court said:

> In contrast, most of the statements made by Gonzales to Baca that incriminated appellants cannot reasonably be considered to have been in furtherance of the conspiracy. Gonzales and Baca had been living together in a common-law marriage relationship. Gonzales often discussed his activities with Baca, who did not participate in the alleged conspiracy until long after its inception. Baca testified that Gonzales told her that he was going to Tucson to obtain narcotics from Yanez. There is no evidence that Gonzales' statement was a declaration in furtherance of the conspiracy. Gonzales was not seeking to induce Baca to join the conspiracy and his statement did not assist the conspirators in achieving their objective. Gonzales' "statement was, at best, nothing more than [a] causal admission of culpability to someone he had individually decided to trust."
>
> Similarly, when Gonzales informed Baca about the persons to whom he had spoken over the telephone, he was not making a declaration in furtherance of the conspiracy. Instead, he was merely informing his common-law wife about his activities. . . .
>
> After Baca began travelling to Tucson with Gonzales and assisted him with the arrangements for obtaining heroin, she assumed a role in the alleged conspiracy. Yet Baca's participation in the conspiracy did not convert Gonzales' statements to her into declarations in further-ance of the conspiracy. Most of Gonzales' statements to Baca that were included in her testimony did nothing to advance the aims of the alleged conspiracy.

591 F.2d at 520 (citations omitted). The significance and neces-sity of the "in furtherance" requirement were examined by this court in *Williams* v. *State*, 7 Ark. App. 151, 645 S.W.2d 697 (1983), where it was noted that the reason for the "in further-ance" requirement was "the desire to strike a balance between the need to admit statements of coconspirators and the need to

protect the accused against idle chatter of criminal partners." *See also United States* v. *Layton*, 720 F.2d 548 at 556 (9th Cir. 1983), *cert. denied*, 405 U.S. 1069 (1984); *United States* v. *Johnson*, 927 F.2d 999 at 1002 (7th Cir. 1991). We said, "[T]he requirement is clear — although whether a statement meets the requirement may not be." *Williams*, 7 Ark. App. at 155, 645 S.W.2d at 699.

The facts in *United States* v. *Wood*, 834 F.2d 1382 (8th Cir. 1987), were similar to those in *Eubanks*. Wood and Stanton were alleged co-conspirators and the District Court had permitted Stanton's wife, Mary, to testify that Stanton had told her that he was working for Wood by putting radios in boats used for drug smuggling. The Court said:

> Whether the statement was made in furtherance of the conspiracy is a close question. Mary Stanton testified that her husband told her that he was working for Wood installing radio equipment in boats "used for marijuana." Although the statement refers to drugs, it doesn't appear that Michael Stanton was seeking to induce his wife to join the conspiracy. There is no evidence that Stanton's statement prompted action in furtherance of the conspiracy by either participant in the conversation. Stanton's statement did not identify the role of one conspirator to another, because Mary Stanton was not involved in the conspiracy. A more credible, albeit pedestrian, interpretation is that he was merely informing his wife about his activities. We hold that the statement was not in furtherance of the conspiracy, and therefore did not qualify for admission under Fed.R.Evid. 801(d)(2)(E).

834 F.2d at 1385.

At trial, the State argued that Kenneth Clements's statements to his wife were in furtherance of the conspiracy because the statements were "for the purpose of covering his tracks." The State argued strenuously and repeatedly that the court had so ruled in the first McMillen trial and in the second McMillen trial and that it should so hold here. As the prosecutor argued:

> We've been through this twice before, and I ask the Court to hold in accordance with its previous ruling, which is

someone who's involved in a conspiracy and has someone living with them and works with them, who answers the telephone and deals with people coming and going, must be aware of what that person is involved with; otherwise, the wife would trip that person up and put him flat on his back in jail. And, that's exactly why she had to be made aware of these things. It was in furtherance of the conspiracy.

The State makes essentially the same argument on appeal.

■ The facts in the case at bar cannot be successfully distinguished from those in *Eubanks* and *Wood*, and we find the reasoning of those decisions persuasive. We hold that the trial court's finding that statements made by Kenneth Clements to his wife Denise were "in furtherance of a conspiracy" was erroneous and that Denise Clements's testimony was therefore inadmissible as hearsay.

### 3. ADMISSIBILITY OF APPELLANT'S STATEMENTS

■■ Appellant argues that his statement was coerced by the prosecuting attorney's threat and should not have been admitted. Custodial statements are presumed to be involuntary, and the State has the burden of proving otherwise. A statement induced by fear or hope of reward is not voluntary. *Sanders* v. *State*, 305 Ark. 112, 805 S.W.2d 953 (1991). On appeal, we make an independent review of the totality of the circumstances, but will reverse only if the trial court's finding is clearly against a preponderance of the evidence. *Porchia* v. *State*, 306 Ark. 443, 815 S.W.2d 926 (1991).

Appellant testified at the pretrial hearing regarding the circumstances of his giving a statement. The chief of police called appellant down to the station to talk to the state police investigators. Appellant described his contact with the prosecuting attorney as follows:

A. Well, we sat down there and, uh, they said, "Well, we need to ask you some questions. Before we do," said, uh, "Mr. Foster wants to tell you something," or wants to speak to you.

. . . .

Q. Okay. What did Mr. Foster tell you?

A. Mr. Foster came in. He, uh, sat down there at Bobby's desk, and I believe he crossed his hands, and he said, uh, "Randy," said, "this is the hardest thing I've ever had to do." He said, "I'm going to charge you with capital felony murder or accessory to capital felony murder, if you don't give me a statement."

Q. Did—was there anything said about the death penalty?

A. Yes. He said, uh—he said, "I'm gonna' charge you or—with accessory or accomplice to capital felony murder, and I'm gonna' ask for the chair." I remember his saying, "I'm gonna' ask for the chair."

Q. Why are you—why are you so—

A. Because it scared me to death. I mean it's just—it's just like somebody says, well, I'm fixing to blow your head off, you know.

. . . .

Q. Okay. Uh, what effect did Mr. Foster's statements have on you?

A. Well, it was just—I don't know, I just was out of control. My—I just couldn't think of what—what was happening. I—all I could think of was my family, my job, just, you know, everything seemed to be—you know, it was going to be down the tube, you know. My—

Q. Did—I think I've already asked you. Did you give Mr. Swesey and Mr. Williams and Mr. Howard a statement?

A. Yes, I did.

Q. Did you give them the statement as a result of what Mr. Foster had told you?

A. Yes.

Appellant's version of this exchange basically corroborated the earlier testimony of State Police Officer Howard, except for the statement attributed to the prosecutor about "asking for the

chair." It is undisputed that Leach was advised of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966).

■ In examining the totality of the circumstances, the supreme court has said that the inquiry should be divided into two main components: the statement of the officer (in this case, the prosecutor) and the vulnerability of the defendant. *See Sanders* v. *State*, 305 Ark. 112, 805 S.W.2d 953 (1991); *Williams* v. *State*, 281 Ark. 91, 663 S.W.2d 700 (1983), *cert. denied*, 469 U.S. 980 (1984); *Davis* v. *State*, 275 Ark. 264, 630 S.W.2d 1 (1982).

Here, the defendant was an experienced police officer. There was no contention that he was unable to understand his rights for any reason.

■ Nor does the nature of the statement by the prosecuting attorney require suppression. The circumstances of the case at bar are similar to those found in *Tippitt* v. *State*, 285 Ark. 294, 686 S.W.2d 420 (1985). There, Tippitt was a suspect in an aggravated robbery and attempted capital murder case. Two accomplices were charged with aggravated robbery and attempted capital murder. Investigating officers agreed not to charge Tippitt with attempted capital murder if he would give a statement. The court said:

> The issue before us is whether the inculpatory custodial statement, given in exchange for a promise not to prosecute appellant for an additional crime, should have been suppressed. There is no dispute that the statement was given in exchange for the promise not to charge appellant with attempted capital murder. The *Miranda* warnings were given prior to the statement being made. Custodial statements are presumed involuntary and the state must overcome the presumption by a preponderance of the evidence. Statements given with hope of reward are not voluntary.
>
> . . . .
>
> Under the facts and circumstances of this case, when considered in their totality, we think the trial court was correct in admitting the statement. The appellant struck a bargain, which was closely related to a plea bargain, and

> both sides kept their promises. Most likely the deal was a wise one for the appellant. In any event we can find no prejudicial error. [Citations omitted.]

*Tippitt* v. *State*, 285 Ark. at 295, 686 S.W.2d at 421; *see also Williams* v. *State*, 281 Ark. 91, 663 S.W.2d 700 (1983), *cert. denied*, 469 U.S. 980 (1984). We find no error in the court's denial of the motion to suppress the defendant's statement.

■ Appellant also argues that it was error to allow Ollie Willborg, an investigator for the prosecuting attorney, to testify about comments made by appellant while he was awaiting bail and on another chance encounter at the courthouse. Appellant argues that the inculpatory nature of those statements compels the conclusion that, due to the coercive nature of the prosecutor's earlier statements, "appellant did not possess sufficient mental freedom" to confess or deny his participation in the crime. These statements were freely offered, and the circumstances do not display coercion any more than those surrounding the giving of the initial statement to the investigators.

## 4. THE MOTION IN LIMINE

At trial the State moved in limine for an order prohibiting appellant from testifying about the prosecutor's offer to charge him with capital murder unless he gave a statement. The court granted the motion. This was error.

■ In *Kagebein* v. *State*, 254 Ark. 904, 496 S.W.2d 435 (1973), addressing a similar argument, the court said:

> The purpose of our *Denno* hearing statute (Ark. Stats. 43-2105) is to prevent a jury from hearing a confession before the court determines that it has been voluntarily given. It is not intended to restrict evidence a jury may hear after a court determination of voluntariness has been made. The defendant still has the constitutional right to have his case heard on the merits by a jury, including the weight and credibility the jury might give to the voluntariness of the confession. *Walker* v. *State*, 253 Ark. 676, 488 S.W.2d 40 (1982); *Lego* v. *Twomey*, 404 U.S. 477, 30 L. Ed. 2d 618, 99 S.Ct. 619 (1972).

And in *Crane* v. *Kentucky*, 476 U.S. 683 (1986), the United

States Supreme Court stated:

> As the Court noted in Jackson, because "questions of credibility, whether of a witness or of a confession, are for the jury," the requirement that the court make a pretrial *voluntariness* determination does not undercut the defendant's traditional prerogative to challenge the confession's *reliability* during the course of the trial.
>
> . . . .
>
> Indeed, stripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?
>
> . . . .
>
> [W]e have little trouble concluding on the facts of this case that the blanket exclusion of the proffered testimony about the circumstances of petitioner's confession deprived him of a fair trial. [Citations omitted.]

The record will not support the State's contention that appellant's counsel somehow invited the error.

## 5.  SEQUESTERED VOIR DIRE

Before trial, the court denied appellant's request for individual sequestered voir dire. Appellant argues that he was thereby inhibited from asking prospective jurors questions about their knowledge of related criminal litigation, and urges us to adopt § 3.4(a) of the Standards Relating to Fair Trial and Free Press promulgated by the American Bar Association Project on Standards for Criminal Justice. That section provides:

> (a)  Method of examination. Whenever there is believed to be a significant possibility that individual talesmen will be ineligible to serve because of exposure to potentially prejudicial material, the examination of each juror with respect to his exposure shall take place outside the presence of other chosen and prospective jurors. An accurate record of this examination shall be kept, by court reporter or tape recording whenever possible. The questioning shall be

conducted for the purpose of determining what the prospective juror has read and heard about the case and how his exposure has affected his attitude towards the trial, not to convince him that he would be derelict in his duty if he could not have cast aside any preconception he might have.

■ Appellant concedes that the decision to grant or deny sequestered individual voir dire is left to the discretion of the trial court. *Burnett* v. *State*, 287 Ark. 158, 697 S.W.2d 95 (1985). He also concedes that reversal will not lie absent a showing of prejudice. *See, e.g., Logan* v. *State*, 300 Ark. 35, 776 S.W.2d 341 (1989). Because here, as in *Logan*, the record does not reflect the requisite prejudice, appellant urges us to adopt the ABA standard and overrule the supreme court's decisions in *Logan*; *Heffernan* v. *State*, 278 Ark. 325, 645 S.W.2d 666 (1983); and other supreme court cases stating the same principle. Despite appellant's contention to the contrary, we lack the authority to overrule decisions of the Arkansas Supreme Court. *Huckabee* v. *State*, 30 Ark. App. 82, 785 S.W.2d 223 (1990). It will be for the circuit court to decide whether, on retrial, sequestered voir dire is necessary.

## 6. JURY INSTRUCTIONS

Appellant also argues that it was error for the trial court to refuse to give a series of five requested jury instructions on conspiracy. These instructions were based on those given in other states and supported by language in some Arkansas cases, commentary to statutes, Corpus Juris Secundum, and a federal case. The trial court gave AMCI 707, the standard instruction on conspiracy, as well as appellant's requested instruction defining an "overt act."

■ Just because appellant's offered instructions contained correct statements of the law does not mean that it was error for the trial court to refuse to give them. *Hardcastle* v. *State*, 25 Ark. App. 157, 755 S.W.2d 228 (1988). It is not necessary to give a requested instruction if it is sufficiently covered by another instruction. *Clark* v. *State*, 15 Ark. App. 393, 695 S.W.2d 396 (1985). Non-model instructions are to be given only when the trial court finds that an AMCI instruction does not accurately state the law or is inapplicable. *Campbell* v. *State*, 294 Ark. 639, 746 S.W.2d 37 (1988). Because AMCI 707 accurately

states the law and is applicable, the court did not err.

## 7.  CLOSING ARGUMENT

■ Ollie Willborg, the investigator employed by the prosecuting attorney's office, testified for the State. In closing argument the prosecutor said, "I hope you looked into that man's [Willborg's] eyes. Y'all don't know him like some of the rest of us do, but I hope that you looked into his eyes." Appellant objected on the basis that the prosecuting attorney was personally vouching for the credibility of the witness. We agree that the comment could be so construed. As such it was improper, *see Harrison* v. *State*, 276 Ark. 469, 637 S.W.2d 549 (1982), and should be avoided on retrial.

Our conclusion is that the trial court erred in admitting the hearsay testimony of Denise Clements, and in prohibiting the appellant from testifying about the circumstances under which he gave his statement to the police. We remand the case to the circuit court for further proceedings in keeping with this opinion.

Reversed and remanded.

DANIELSON and MAYFIELD, JJ., agree.