Johnny Lee GIVENS *v.* STATE of Arkansas

CA CR 92-1018                                    856 S.W.2d 33

Court of Appeals of Arkansas
Division II
Opinion delivered June 23, 1993
[Rehearing denied August 18, 1993.]

174

*Walker, Roaf, Campbell, Ivory & Junklin*, by: *Larry G. Dunklin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant, a black man, was convicted of rape by an all white jury. He was sentenced to ten years in the Arkansas Department of Correction. On appeal, the appellant argues that the jury selection was fundamentally unfair and a violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. We find no error and affirm.

During voir dire, the State asked if anyone on the panel had teenaged children. Prospective jurors, Allen McCurry and Donna Harris answered affirmatively. Next, the State asked if anyone on the panel had been a victim or knew someone who had been a victim of a crime. Ms. Harris explained that she had a goddaughter who had been raped in the last year and that the culprit had not been convicted. During further voir dire by the appellant's counsel, Ms. Harris and Mr. McCurry stated they felt that if the appellant did not testify at trial, it would have an effect on how they evaluated the case. Counsel for the appellant stated to the court that due to their opinions, there was cause to excuse

Ms. Harris and Mr. McCurry. However, the trial court did not rule on the matter at that point and told the appellant's counsel to go ahead with his questions.

When Ms. Harris was further questioned, she stated that she would be sympathetic to the victim because her goddaughter had been raped. The appellant's counsel asked that he might sequester Ms. Harris for voir dire outside the hearing of the rest of the panel. The trial court denied this request and proceeded to ask Ms. Harris: whether it was true that she would not convict the appellant because her goddaughter was raped; whether she would require the State to prove that the appellant was guilty beyond a reasonable doubt before she would convict him; and whether it was true that she would not try to get even with whomever raped her goddaughter by convicting the appellant. Ms. Harris replied affirmatively to all three questions. Ms. Harris further stated that she did not know whether her experience would have an impact on her evaluation of the victim but that she would be fair. Counsel for the appellant requested again to ask Ms. Harris questions in a sequestered setting. The trial court denied this request and told counsel to go ahead and ask the questions and that if he felt Ms. Harris could be a fair juror, he should accept her and if not, then he should excuse her. The appellant then exercised a peremptory challenge while taking exception to the trial court's ruling, asserting that Ms. Harris should have been excused for cause.

Subsequently, counsel for the appellant stated that he did not know whether they had resolved the question concerning Mr. McCurry. In response to the trial court's questioning, Mr. McCurry responded that he could give the State and the appellant a fair trial but that it would bother him personally if the appellant did not testify. The trial court then excused him.

Thereafter, another prospective juror, Nellie Hindman, was questioned. Counsel for appellant objected, arguing that if he had not had to use one of his peremptory challenges to strike Ms. Harris, then he would have been able to strike this juror.

The appellant argues that he was forced to utilize a peremptory challenge to unseat Ms. Harris, a black juror, when Mr. McCurry, a white juror who was similarly situated, was removed for cause. As an adjunct to this argument, he contends that because he was forced to peremptorily strike Ms. Harris, he

lacked a peremptory challenge with which to strike Ms. Hindman.

■ In order to have preserved this point for appeal it must appear from the record that the trial court should have excused Ms. Harris for cause, not Ms. Hindman, the juror the appellant was forced to accept. *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982); *contra Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988). The appellant must have exhausted his peremptory challenges and stated for the record that there was someone sitting on the jury that he would have stricken if he had another peremptory challenge. *Hill, supra*; *Noel* v. *State*, 28 Ark. App. 158, 771 S.W.2d 325 (1989).

■■ Jurors are presumed unbiased and the burden of proving actual bias is on the party challenging the juror. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). A potential juror may be challenged for cause if he or she is actually biased. *Henry* v. *State*, 309 Ark. 1, 828 S.W.2d 346 (1992). A venire person is actually biased if he or she cannot try the case impartially and without prejudice to the substantial rights of the party challenging. *Id*. This determination lies within the sound discretion of the trial court. Further, the trial court is in a superior position to access the demeanor of prospective jurors. *Id*. We find that Ms. Harris was sufficiently rehabilitated by the trial court so that we cannot say it was error to not strike her for cause.

The appellant contends that the selection of the jury was tainted because he was not allowed to sequester Ms. Harris and that the trial court refused to allow him to make a record in this regard. He also contends that the trial court improperly rehabilitated Ms. Harris.

Counsel for the appellant stated that he felt the questions he wanted to ask Ms. Harris would be prejudicial to the remainder of the panel. After the trial court denied his second request to sequester Ms. Harris, counsel for the appellant stated for the record that "there are questions that I am not going to ask in the presence of the remainder of the jurors, the entire panel. And the reason for my not following up those questions with Mrs. Harris is that I believe it would unduly prejudice Mr. Givens' right to a fair trial." In denying his request, the trial court stated that there was no evidence before the court as to any prejudice.

■ The decision to grant or deny sequestered individual voir dire is left to the discretion of the trial court. *Leach* v. *State*, 38 Ark. App. 117, 831 S.W.2d 615 (1992), *aff'd* 311 Ark. 485, 845 S.W.2d 11 (1993). Also, the extent and scope of voir dire in general is within the sound discretion of the trial court. We will not reverse the trial court absent a clear abuse of this discretion. *Henry*, *supra*. The appellant has not shown that he was prejudiced by the trial court's ruling or in the trial court's questions of Ms. Harris and we find no evidence from the record that the trial court refused to allow him to make a record regarding the matter.

■ The appellant next argues that the number of blacks on the venire panel was vastly disproportionate to the population as a whole because there were only three blacks on the thirty member panel from which the jury was selected. The selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial. *Sanders* v. *State*, 300 Ark. 25, 776 S.W.2d 334 (1989). In order to establish a prima facie violation of the fair cross-section requirement, the appellant must show that (1) the group alleged to be excluded is a "distinctive group" in the community, (2) the representation of this group in venires from which the jurors are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Id.*

■ Here, the appellant clearly did not meet his burden of proof. From our review of the record, there is a lack of proof as to the racial makeup of the community and the jury panel, and there is no showing that the underrepresentation of blacks in the appellant's jury panel is due to systematic exclusion in the jury selection process. Furthermore, the fact that there were only three black persons on the panel from which the jury in this case was selected does not mean the jury was selected in a way which would not result in a fair cross-section. *Mitchell* v. *State*, 299 Ark. 566, 776 S.W.2d 332 (1989).

For his last argument, the appellant contends that the principle set out in *Batson* v. *Kentucky*, 476 U.S. 79 (1986), was violated when the State dismissed a black juror, Danny Austin. In

*Batson,* the Supreme Court held that a criminal defendant has the right to be tried by a jury whose members are selected pursuant to a nondiscriminatory criteria. The Supreme Court further held that the Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury on account of race or on the false assumption that members of his race as a group are not qualified to serve as jurors. *Wainwright* v. *State,* 302 Ark. 371, 790 S.W.2d 420 (1990), *cert. denied* 111 S.Ct. 1123 (1991).

■ Under *Batson,* the appellant has the burden of establishing a prima facie case of purposeful discrimination. The prima facie case may be made by showing any one of the following: (1) the totality of the relevant factors gives rise to an inference of discriminatory purpose; (2) the total or seriously disproportionate exclusion of blacks from the jury venires; or (3) a pattern of strikes, or questions and statements by a prosecuting attorney during voir dire. *Wainwright, supra.* Once a prima facie case is shown, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. *Watson* v. *State,* 308 Ark. 444, 825 S.W.2d 569 (1992).

■ The appellant argues that the State struck Mr. Austin without making any inquiry. However, the record reveals that Mr. Austin was questioned by the trial court and he admitted that he knew the appellant from school. Mr. Austin was struck by the State along with two other jurors, presumably not black. It was the appellant who struck the two other black jurors. From these facts we conclude the appellant failed to establish a prima facie case, but even if he had done so, the State clearly had a racially neutral reason for challenging Mr. Austin. Accordingly, we find no error and affirm.

Affirmed.

JENNINGS, C.J., and ROBBINS, J., agree.