Mickey David THOMAS  *v.*  STATE of Arkansas

CR 06-439                                                    257 S.W.3d 92

Supreme Court of Arkansas
Opinion delivered May 17, 2007

[Rehearing denied June 21, 2007.]

*Janice Vaughn* and *Teri Chambers*, Arkansas Public Defender Commission, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., and *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. Appellant, Mickey David Thomas, appeals his conviction of two counts of capital murder of Mona Shelton and Donna Cary. For each count a Pike County jury returned a sentence of death. We affirm the jury's verdict.

On June 14, 2005, DeQueen Police found the bodies of two women at Cornerstone Monument Company after receiving a call about a possible break-in. Mona Shelton, the owner of the company, had been beaten and shot once in the head. Donna Cary, a customer, had been shot once in the head at close range. Police received a report of a black male with a white bag walking away from the front of Cornerstone Monument Company and getting into a pewter or copper-colored Ford Mustang with an Oklahoma license plate. Police broadcast this description to area law enforcement officers, and at 11:27 a.m., Trooper Jamie Gravier of the Arkansas State Police spotted the Mustang traveling west near the Oklahoma-Arkansas border. Gravier attempted to stop the vehicle, and a high-speed chase ensued into Broken Bow, Oklahoma.

Oklahoma police ultimately located the vehicle parked behind the Broken Bow residence of Hazel Thomas, Appellant's mother, but the driver had already left the area. That same afternoon, police received a report that a black male with a gun had just stolen a Broken Bow resident's Mercury Cougar. The Oklahoma authorities spotted the vehicle, and they were able to apprehend Appellant.

Appellant waived extradition to Arkansas and was charged in Sevier County with two counts of capital murder in the deaths of Mona Shelton and Donna Cary. The case was transferred to Pike County where Appellant was convicted of two counts of capital murder and was given a sentence of death for each count. Appellant now brings his appeal.

### Change of Venue

For his first point on appeal, Appellant argues that the trial court erred by transferring his trial to a county with a substantially smaller population of persons of Appellant's race. Appellant filed a motion for change of venue alleging that "[t]his case has been highly publicized to the extent that the mind of the inhabitants of

Sevier County are so prejudiced against the Defendant that a fair and impartial trial cannot be had in this county." The trial court granted Appellant's motion for change of venue, and transferred the case to Pike County. On appeal, Appellant argues that the trial court "deliberately chose to send this case to a district in which whites were overwhelmingly over-represented, and blacks virtually non-existent," and that the trial court gave absolutely no explanation for the transfer to Pike County.

In response, the State argues that Appellant did not preserve this argument because the petition for change of venue only asked for a transfer because the case was highly publicized; specifically, the State contends that the trial court's granting of Appellant's motion precludes Appellant from raising this issue on appeal. The State also asserts that "while the Appellant complains that the trial court moved venue in the case 'without explanation,' it was the Appellant's responsibility in obtaining a ruling, i.e., an explanation that would have preserved his objection." Alternatively, the State argues that the trial court's decision to move the venue of the trial to Pike County was not an abuse of discretion.

We first address the issue of whether Appellant's argument is preserved. We have precluded appellants from raising arguments on appeal that were not first brought to the attention of the trial court. *Callaway v. State*, 368 Ark. 412, 246 S.W.3d 889 (2007) (citing *Marta v. State*, 336 Ark. 67, 80, 983 S.W.2d 924, 931 (1999); *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997); *McGhee v. State*, 330 Ark. 38, 954 S.W.2d 209 (1997)). We have extended this preclusion to include constitutional arguments. Our law is well settled that issues raised for the first time on appeal, even constitutional ones, will not be considered because the trial court never had the opportunity to rule on them. *Id.* (citing *London v. State*, 354 Ark. 313, 320, 125 S.W.3d 813, 817 (2003)). We have repeatedly held that an Appellant is limited by the scope and nature of the arguments and objections presented at trial, and may not change the grounds for objection on appeal. *Id.*; *see also Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842 (2005); *City of Fort Smith v. Didicom Towers, Inc.*, 362 Ark. 469, 209 S.W.3d 344 (2005); *Barnes v. Everett*, 351 Ark. 479, 495, 95 S.W.3d 740, 750 (2003).

It is well settled that a contemporaneous objection is required to preserve an issue for appeal, but this court has recognized four exceptions to the rule, known as the *Wicks* exceptions. *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980); *see also Springs v. State*, 368 Ark. 256, 244 S.W.3d 683 (2006); *Anderson v. State*, 353

Ark. 384, 108 S.W.3d 592 (2003). These exceptions occur when (1) a trial court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) a trial court errs at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) a trial court should intervene on its own motion to correct a serious error; and (4) the admission or exclusion of evidence affects a defendant's substantial rights. *Id.*

In the present case, Appellant, in his motion for change of venue, asked the trial court to transfer the case out of Sevier County because of the publicity surrounding the case. At the July 21, 2005 hearing on the motion for change of venue, Appellant presented voluminous evidence of pretrial publicity. Appellant also presented the census 2000 Data Tables for Population Percent by Race and County. Appellant stated he was hesitant in asking the court to send his case to Pike County because, according to the census tables, only 3.5% of Pike County's population was black. However, Appellant failed to mention any of the constitutional arguments he now raises in this point on appeal, such as systematic exclusion of specific racial groups, violation of the Fourteenth and Sixteenth Amendments, or a *Batson* challenge. Therefore, it is clear that Appellant failed to make a sufficient record that would support a finding that the trial court erred in transferring the case to Pike County.

Appellant also argues that the trial court transferred his case to Pike County "without explanation." Failure to obtain a ruling on an issue at the trial court level, including a constitutional issue, precludes review on appeal, and we must therefore decline to address such an issue. *Fisher v. State*, 364 Ark. 216, 217 S.W.3d 117 (2005); *Huddleston v. State*, 347 Ark. 226, 61 S.W.3d 163 (2001) (per curiam). It was Appellant's responsibility in this case to obtain an explanation of why the case was transferred to Pike County, and he has failed to do so on appeal. Moreover, Appellant's argument that the trial court erred in transferring his case to Pike County does not fall under any of the *Wicks* exceptions. Because Appellant failed to preserve this argument and because there is no *Wicks* exception, we do not reach the merits on this point.

*Jury Pool*

For his second point on appeal, Appellant argues that the trial court abused its discretion by failing to enhance the prospective jury pool pursuant to Ark. Code Ann. § 16-32-301 and Ark.

Code Ann. § 16-32-303 (Supp. 2005). Appellant again asserts that the trial court's selection of Pike County deprives him of his Sixth and Fourteenth Amendment constitutional rights in connection with the selection of a jury panel. Appellant repeats his argument that the trial court deliberately and purposefully transferred this case to a county with virtually no non-white residents. The State responds, arguing that Appellant has failed to preserve an objection to the use of voter registration in the jury selection process by failing to establish any of the requirements set out in *Duren v. Missouri*, 439 U.S. 357 (1979).

Arkansas Code Annotated § 16-32-301 allows for jury pool expansion and states:

> (a) The pool of names from which prospective jurors are chosen may be expanded from the list of registered voters to include the list of licensed drivers and persons issued an identification card under § 27-16-805.
>
> (b) The qualifications for serving on a jury under § 16-31-101 and the disqualifications under § 16-31-102 shall apply to the enhanced prospective juror pool permitted under subsection (a) of this section.

*Id.* Ark. Code Ann. § 16-32-303 allows the administrative circuit judge for each county to determine whether to use the list of registered voters or the enhanced list. Section 16-32-303 states:

> (a) The administrative circuit judge for each county shall determine that either the list of registered voters or the enhanced list, but not both, shall be utilized in the selection of all prospective jurors for all circuit court divisions within the county, based upon a consideration of whether the use of registered voters creates a sufficient pool for the selection of jurors to offer an adequate cross section of the community.
>
> (b) If the judge determines that the enhanced prospective juror list, as described in § 16-32-302, should be used by the county, then the judge on or before October 1 shall inform the circuit clerk who shall notify the Secretary of State and the Administrative Office of the Courts that the enhanced list will be requested for the county.

*Id.*

In the present case, in a memo dated September 14, 2004, Judge Charles Yeargan and Judge Ted Capeheart stated that they did not feel it was in the best interest of the Ninth West Judicial

District to change to motor vehicle registration, and that they would reevaluate their decision in "a couple of years." This decision to use the list of registered voters instead of the list of licensed drivers was clearly within the court's discretion pursuant to § 16-32-303.

We have repeatedly held that selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial. *Lee v. State*, 327 Ark. 692, 942 S.W.2d 231 (1997); *Danzie v. State*, 326 Ark. 34, 930 S.W.2d 310 (1996); *Davis v. State*, 325 Ark. 194, 925 S.W.2d 402 (1996). There is no requirement, however, that the petit jury actually seated in a defendant's case mirror the community and reflect the various distinctive groups in the population. *See Danzie, supra.* It is axiomatic that the State may not deliberately or systematically deny to members of a defendant's race the right to participate, as jurors, in the administration of justice. *See Lee, supra; Davis, supra; Sanders v. State*, 300 Ark. 25, 776 S.W.2d 334 (1989). In order to establish a prima facie case of deliberate or systematic exclusion, a defendant must prove that (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Lee, supra,* (citing *Duren v. Missouri*, 439 U.S. 357 (1979)).

In the present case, Appellant had the burden of proving systematic exclusion of members of his racial group from the venire. *Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996). Only after making a prima facie case by establishing these three elements could the burden shift to the State to justify its procedure. *Id.* Appellant argues that the trial court deliberately and purposefully transferred his case to a county with virtually no "non-white" residents. The term "non-white" is not a "distinctive" racial group under the U.S. Supreme Court's decision in *Duren v. Missouri, supra.* Here, Appellant has failed to cite and we have found no case law that would allow Appellant to aggregate racial groups in this manner. Appellant has failed to prove any systematic exclusion of black people from the jury-selection process. *See Duren, supra.* The jury venire in this case was randomly selected by a computer program and race was not identified. We have held that when the jury venire is drawn by random selection, the mere

showing that it is not representative of the racial composition of the population will not make a prima facie showing of racial discrimination. *See Mitchell, supra* (citing *Cleveland v. State,* 315 Ark. 91, 865 S.W.2d 285 (1993); *Thomas v. State,* 289 Ark. 72, 709 S.W.2d 83 (1986)). Therefore, we hold that the trial court did not err by denying Appellant's motion to expand the jury pool.

### *Ark. Code Ann. §§ 5-4-603 to -605*

For his next argument, Appellant asks us to declare Ark. Code Ann. §§ 5-4-603 to -605 (Repl. 1997) constitutionally defective due to Appellant's assertion that it fails to guide the jury by failing to define "mitigation" and does not clearly and objectively establish standards with regard to the weight and effect to be given mitigation evidence. Appellant also asks us to overrule all precedent inconsistent with such a finding. Alternatively, Appellant is requesting that we define "mitigation" and construe the statute or adopt rules and instructions, so as to provide guidance to trial courts and jurors in their sentencing decision-making. We reject both arguments.

We do not lightly overrule cases and apply a strong presumption in favor of the validity of prior decisions. *See State v. Singleton,* 340 Ark. 710, 13 S.W.3d 584 (2000); *McGhee v. State,* 334 Ark. 543, 975 S.W.2d 834 (1998) (superseded by statute on other grounds). As a matter of public policy, it is necessary to uphold prior decisions unless a great injury or injustice would result. *Id.* (citing *Sanders v. County of Sebastian,* 324 Ark. 433, 922 S.W.2d 334 (1996)).

We have repeatedly upheld the Arkansas capital-sentencing scheme. The capital-murder sentencing statutes are not unconstitutionally vague simply because there is no definition of "mitigating circumstance." *Henderson v. State,* 279 Ark. 414, 652 S.W.2d 26, *cert. denied,* 464 U.S. 1012 (1983). In *Hill v. State,* 289 Ark. 387, 713 S.W.2d 233 (1986), we stated:

> As to Hill's proffered mitigation instruction, we decline to overrule *Pruett v. State,* [287 Ark. 124, 697 S.W.2d 872 (1985)]. In that case, we concluded that the statutory language naming the elements of mitigation was not vague or beyond the common understanding of the ordinary juror. Thus, an instruction providing a definition of mitigation was not necessary. In the instant case, the jury was instructed that: "Unlike aggravating circumstances, you

are not required to be convinced of the existence of a mitigating circumstance beyond a reasonable doubt. A mitigating circumstance is shown if you believe from the evidence that it probably existed.

■ In the present case, we find no compelling reason to overrule our case law on this issue. Therefore, we once again hold that no further definition of mitigation is necessary, and that the death penalty sentencing scheme is constitutional.

### Victim-impact evidence

Appellant further argues that the trial court erred by failing to grant Appellant's motions to prohibit victim-impact evidence. Appellant argues that Ark. Code Ann. § 5-4-602(4) (Repl. 1997), as amended, allows victim-impact and "other evidence" only when relevant to the aggravators or mitigators advanced at trial. He further asserts that, instead of helping to prove the State's aggravators or to disprove any of the mitigators, the victim-impact evidence introduced in his case only encouraged the jury to respond emotionally and to arbitrarily base its decision on irrelevant matters. The State responds, arguing that our holding in *Anderson v. State,* 367 Ark. 536, 242 S.W.3d 229 (2006), clearly rejects Appellant's arguments on this point. We agree.

The Arkansas Legislature passed Act 1089 of 1993, which amended Ark. Code Ann. § 5-4-602(4), by adding victim-impact evidence and "other matter[s] relevant to punishment" to the list of evidence that could be presented at the sentencing of a capital case. We have repeatedly rejected the notion that victim-impact evidence acts as an aggravating circumstance or that it violates the statutory weighing process set out in capital murder cases. *See Anderson, supra; Johnson v. State,* 356 Ark. 534, 157 S.W.3d 151 (2004); *Noel v. State,* 331 Ark. 79, 960 S.W.2d 439 (1998). Victim-impact evidence admitted pursuant to Ark. Code Ann. § 5-4-602(4) is relevant evidence which informs the jury of the toll the murder has taken on the victim's family. *See Noel, supra.* In *Anderson,* we held that victim-impact evidence is relevant to assist the jury in imposing punishment based on a measurement of the injury to society. (citing *Payne v. Tennessee,* 501 U.S. 808 (1991)).

In the present case, three aggravating circumstances were presented by the State: (1) that Appellant previously committed another felony, an element of which was the use or threat of

violence to another person or created a substantial risk of death or serious physical injury to another person; (2) that in the commission of the capital murder, Appellant knowingly caused the death of Mona Shelton and Donna Cary in the same criminal episode; and (3) that the capital murder was committed for pecuniary gain. Appellant provided evidence of thirty-two separate mitigators, twenty-five of which one or more members of the jury found to exist. Prior to trial, Appellant filed two detailed motions seeking to prohibit the introduction of victim-impact evidence. The trial court denied Appellant's motions, and the State was allowed to present three witnesses who discussed the impact of Mona Shelton's and Donna Cary's deaths.

Our case law clearly rejects Appellant's assertion that victim-impact evidence is only admissible when relevant to help prove or disprove aggravating or mitigating circumstances. *See Anderson, supra.* Appellant has failed to meet his burden established in *Hill, supra,* of overruling our precedent on this issue. Secondly, Appellant argues that Ark. Code Ann. § 5-4-602(4) conflicts with Ark. Code Ann. §§ 5-4-603, 5-4-604, 5-4-605 and the Arkansas Rules of Evidence. We also addressed this issue in *Anderson* where we held that victim-impact evidence is separately relevant to punishment. *Id.* (citing *McGehee v. State,* 348 Ark. 395, 72 S.W.3d 867 (2002)). Third, Appellant argues that the determination of relevant evidence at trial is a judicial decision made on a case-by-case basis and cannot be legislatively predetermined. We rejected this argument in *Anderson.* Here, Appellant misconstrues section 5-4-602. Act 1089 of 1993, which amended Ark. Code Ann. § 5-4-602 to include victim-impact evidence as admissible on the issue of punishment for capital murder, declared that victim-impact evidence could be considered. The statute does not declare what victim-impact evidence is relevant in any given case. That issue is decided by the circuit court. *See Anderson, supra.*

Finally, Appellant argues that the statute makes victim-impact evidence an aggravator but fails to narrow the specific acts necessary to make a defendant death-penalty eligible. We have held that the General Assembly has not expanded the scope of punishment or added a new aggravating circumstance by expanding the scope of permissible evidence during the penalty phase. *Nooner v. State,* 322 Ark. 87, 907 S.W.2d 677 (1995). Appellant acknowledges our holding in *Kemp v. State,* 324 Ark. 178, 919 S.W.2d 943 (1996), where we held that victim-impact evidence

does not violate the Eighth Amendment or art. 2, sect. 9 of the Arkansas Constitution. We also held that victim-impact evidence was not so prejudicial so as to violate a defendant's due process rights. *Id.* Therefore, based on our holdings in *Nooner* and *Kemp*, we reject Appellant's argument.

## Void for Vagueness

Appellant argues that Ark. Code Ann. § 5-4-602(4) is void for vagueness. This argument has already been specifically rejected. *See Anderson and McGehee, supra.*

## Request for Continuance

Appellant argues that the trial court abused its discretion in refusing to grant Appellant's requests for a continuance. In response, the State argues that Appellant has not demonstrated that the circuit court abused its discretion because he has not shown that he was prejudiced by the denial of the motions for continuance.

A trial court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case. Ark. R. Crim. P. 27.3 (2006). The law is well established that the granting or denial of a motion for continuance is within the sound discretion of the trial court, and that court's decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Green v. State*, 354 Ark. 210, 118 S.W.3d 563 (2003) (citing *Anthony v. State*, 339 Ark. 20, 2 S.W.3d 780 (1999)). When deciding whether a continuance should be granted, the following factors are to be considered by the trial court: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. *Id.; see also Dirickson v. State*, 329 Ark. 572, 953 S.W.2d 55 (1997). Additionally, the Appellant must show prejudice from the denial of the continuance, and when a motion for continuance is based on a lack of time to prepare, we will consider the totality of the circumstances; the burden of showing prejudice is on the Appellant. *Id.* Finally, we have also held that a lack of diligence alone is sufficient cause to deny a continuance. *Id.*

In the present case, Appellant filed motions for a continuance of the jury trial offering the following justification: (1) his court-appointed lead counsel had just completed a capital murder trial which lasted six days, and had another death penalty trial set to begin just twenty-three days prior to the trial setting in this case; (2) pretrial publicity had spread to Pike County where the trial was being moved on a change of venue; (3) subpoenaed witness Lt. Alex Mathis had been deployed to Afghanistan and was therefore unavailable for trial; (4) the State had filed a late amendment to the felony information, alleging two additional aggravating circumstances; (5) there were outstanding discovery issues; (6) his trial counsel had been unable to complete the investigation and interviews of witnesses, as well as to gather, analyze, and prepare the mitigation evidence; (7) he needed to have an independent DNA analysis conducted on crucial pieces of evidence; and (8) he needed to retain the services of several independent experts to assist counsel with preparation of the cross-examination of eyewitnesses and to provide testimony. The trial court denied Appellant's request for continuance because the trial had been set prior to one of Appellant's counsel's other trial settings; the court believed that Alex Mathis would be at trial; and because the court did not believe that DNA testing would be exculpatory. Appellant renewed his motion on the morning of trial, but this motion was also denied.

Appellant asserts that his counsel believed that other trial settings scheduled closely in time to the trial of this case would hamper the ability to render effective assistance of counsel to Appellant. However, the trial date had been established eight months in advance, and there was no objection by Appellant at that time concerning the trial date. Appellant has not provided any evidence that he did not receive effective assistance of counsel or that he was not adequately represented.

Appellant further asserts that he wanted Lt. Alex Mathis as a live witness at trial for impeachment purposes because, shortly after Appellant's arrest, Mathis testified at a hearing that he did not see any evidence of rape or attempted rape at the scene of the crime. At trial, the State was allowed to introduce a picture of an unused condom found in Appellant's billfold at the time he was arrested. Appellant contends that this allowed the State to insinuate that Appellant had intended or attempted to rape at least one of the victims.

Here, there has been no evidence that the trial testimony of Lt. Mathis would differ from his testimony given in a pretrial hearing on July 1, 2004. It has also not been shown that Lt. Mathis would have been available to testify had the continuance been granted. Further, Appellant has not proven that the lack of a continuance kept Appellant from being able to present evidence of there being no rape or attempted rape at the scene of the crime.

■ Appellant admits in his reply brief that he cannot show prejudice from the results of DNA tests "since he was never given the opportunity to conduct such tests." Appellant asserts that this is an "impossible burden." This assertion is not supported by our case law, which provides that Appellant must show evidence of prejudice from the denial of a motion for a continuance. *See Green, supra.* Therefore, because Appellant has failed to show that he was prejudiced in any way by the denial of the motion for continuance, we hold that the trial court did not abuse its discretion.

### Jury Instructions

Appellant argues that the trial court erred by giving a jury instruction which imposed a nonstatutory burden on Appellant to prove that mitigating circumstances "probably exist." The State responds, arguing that Appellant is not entitled to a non-model instruction, much less one of his own choosing. The State further asserts that our case law has settled any conflict between the statute and the model instructions as to the use of the word "probably." We agree.

At a pretrial hearing, Appellant requested that the trial court substitute a non-AMCI Form 2 because the AMCI 2d Form 2 places the burden on Appellant to prove that mitigating circumstances "probably" exist. Appellant argues (1) that the language "probably exist" in the AMCI instruction is not found in the statutes, but is a product of this Court's rule-making process, thus violating the separation of powers doctrine; (2) that the language violates the Eighth and Fourteenth Amendment's prohibition against cruel and unusual punishment because the burden of proof is imposed by the Court, rather than the legislature; and (3) that the language violates the Eighth and Fourteenth Amendment's ban on cruel and unusual punishment because it prohibits jurors from considering and giving effect to mitigating evidence that "possibly" or "maybe" exists.

We have said that our criminal jury instructions do not trump the plain language of our criminal statutes. *Jones v. State*, 357

Ark. 545, 182 S.W.3d 485 (2004) (citing *McCoy v. State*, 348 Ark. 239, 74 S.W.3d 599 (2002)). However, our holdings have created a presumption that the model instruction is a correct statement of the law. As such, any party who wishes to challenge the accuracy of a model instruction, be it the State or a defendant, must rebut the presumption of correctness. *See McCoy, supra.* We discussed the addition of the word "probably" in *Thessing v. State*, 365 Ark. 384, 230 S.W.3d 526 (2006), stating:

> We do not believe that the addition of the word "probably" in the model instruction that the jury received regarding mitigating factors in any way affected which party had the burden of proof. Nor do we believe that this language suggested to the jury that Thessing had the burden of proof. Nothing in the model instruction given to the jury states that Thessing was required to prove that the mitigating factors probably existed. It simply states that "[a] mitigating circumstance is shown if you believe from the evidence that it probably existed." We agree with the State that the instruction is worded differently from the statute and that this may be an issue that this court's committee on model jury instructions should address. Nevertheless, we also agree with the State that any discrepancy in wording actually benefitted Thessing as proof of a mitigator under the standard of "probably existed" is less severe than actual existence.

Because our case law clearly states that the word "probably" in the model jury instruction does not impose a nonstatutory burden on Appellant, and Appellant has given us no compelling reason to overrule this case law, we hold that the trial court did not abuse its discretion by giving the jury instruction in the present case.

## Rule 10

Arkansas Rule of Appellate Procedure – Criminal 10(b) provides, in pertinent part, that we shall consider the following issues in conducting a mandatory review of death sentences imposed on or after August 1, 2001:

> (i) pursuant to Rule 4-3(h) of the Rules of the Supreme Court and Ark. Code Ann. § 16-91-113(a), whether prejudicial error occurred;

(ii) whether the trial court failed in its obligation to bring to the jury's attention a matter essential to its consideration of the death penalty;

(iii) whether the trial judge committed prejudicial error about which the defense had no knowledge and therefore no opportunity to object;

(iv) whether the trial court failed in its obligation to intervene without objection to correct a serious error by admonition or declaring a mistrial;

(v) whether the trial court erred in failing to take notice of an evidentiary error that affected a substantial right of the defendant;

(vi) whether the evidence supports the jury's finding of a statutory aggravating circumstance or circumstances; and

(vii) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Upon review, we find that no reversible error exists based upon the issues enumerated under Rule 10. Furthermore, the record has been reviewed in this case under Ark. Sup. Ct. R. 4-3(h), and no reversible error has been found. Accordingly, we affirm Appellant's two death sentences.

Affirmed.