
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-15-221

| | | |
|---|---|---|
| KIM DERICK JACKSON | | **Opinion Delivered** October 28, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. CR-11-28 SD] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE DAVID G. HENRY, JUDGE |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

An Arkansas County jury convicted appellant Kim Derick Jackson of possession of marijuana with intent to deliver, second-degree battery, fleeing on foot, and resisting arrest. He was sentenced as a habitual offender to serve an aggregate term of thirty years in prison. Jackson raises three points on appeal: (1) the trial court erred in refusing to grant his motion to dismiss for lack of a speedy trial, (2) the trial court erred in going forward with "an all-white jury," and (3) the trial court erred when it permitted the State's rebuttal witness to testify. We find no error and affirm.

## I. *Trial Testimony*

Jackson does not challenge the sufficiency of the evidence supporting his convictions, so only a brief recitation of the facts is necessary. On March 12, 2011, at around 11:00 p.m., Jackson and three of his friends were sitting inside a parked car in an empty parking lot. Jim

Tucker, Chief of Police for the DeWitt Police Department, approached the car and saw that the occupants were drinking beer. Officers Allen Spencer and Candace Vetsch arrived, and one of them smelled marijuana. Everyone was ordered out of the car. Officers Spencer and Vetsch were searching Jackson when he became unruly. A scuffle ensued, and Tucker, in an attempt to break it up, charged at Jackson, who punched him in the face, breaking his nose. Jackson then broke free from the three police officers and ran behind a building. He was apprehended and eventually handcuffed. Tucker found a plastic baggie containing thirteen smaller baggies containing what appeared to be marijuana on the ground next to Jackson.

Jackson testified in his own defense. He claimed that Tucker's nose was broken when he ran into Jackson's elbow with his face. Jackson stated that he fled because the police officers had pulled their weapons on him, and he was afraid that they were going to shoot him. As he was running, Jackson thought, "Whatcha running for? You ain't did nothing," so he slowed into a jog and put his hands in the air. Jackson stated that the police officers then dragged him behind a building, handcuffed him, and took turns beating him. To this day, he suffers from memory loss and headaches. Also, Jackson testified that, after he was handcuffed, Officer Spencer emptied a can of pepper spray into his eyes, and his hand was broken in two places from the officers' stomping on it.

Tucker was called in rebuttal. He testified that he was present during the entire arrest and that the officers did not beat Jackson while he was handcuffed.



II.   *Arguments & Discussion*

A.   Speedy Trial

Jackson asserts that he was not tried until more than three years after his initial arrest, but he does not dispute that some of the delay was related to his motions for a competency evaluation. According to Jackson, however, the State should be charged with that time because of its "chronic inability to present him for examination." Jackson "acknowledges that Arkansas case law does not currently support his position"; however, Jackson contends that the rule should be changed to allow for circumstances like his where the delay was not his fault, but the State's.

The basic rule regarding speedy trial is that any defendant in circuit court who is not brought to trial within twelve months from the date of his arrest is entitled to have the charges dismissed with an absolute bar to prosecution. *See* Ark. R. Crim. P. 28.1(c); Ark. R. Crim. P. 28.2(a). Once a defendant establishes a prima facie case of speedy-trial violation, the State bears the burden of showing that the delay was the result of the defendant's conduct or otherwise justified. *DeAsis v. State*, 360 Ark. 286, 200 S.W.3d 911 (2005). Arkansas Rule of Criminal Procedure 28.3(a) excludes from the speedy-trial calculation the delay resulting from other proceedings concerning the defendant, including but not limited to, an examination and hearing on the competency of the defendant. To preserve a speedy-trial objection for appeal, the defendant must make a contemporaneous objection at the hearing where the time is excluded. *DeAsis*, *supra*.

Jackson was arrested on March 13, 2011, and his trial was held on September 18,

2014, which is a period of approximately 1,285 days. Therefore, Jackson made a prima facie showing of a speedy-trial violation, but the State demonstrated, and Jackson concedes, that the delay was caused by Jackson's request for a competency evaluation. We agree with the State that the period from August 4, 2011 (when the trial court granted the motion for evaluation), to July 10, 2014 (when Jackson withdrew his motion), was excluded from the speedy-trial calculation. Excluding that period of approximately 1,070 days, Jackson was tried within the time allowed to be considered a speedy trial.

While we understand that it was not Jackson's fault that the mental–health facility refused to accept inmates from the Arkansas Department of Correction (ADC) for evaluation, we note that in *Mack v. State*, 321 Ark. 547, 905 S.W.2d 842 (1995), our supreme court recognized that the State Hospital, where Mack had obtained a mental evaluation, was independent of the judiciary and the prosecuting attorney's office, such that "delays caused by its operations would not be subject to the same level of scrutiny as delays caused by the criminal justice system itself." *Id.*, 321 Ark. at 551, 905 S.W.2d at 844 (citing *Collins v. State*, 304 Ark. 587, 590, 804 S.W.2d 680, 681 (1991)). Similarly, here, the State had no say in the ADC's transportation of prisoners and the mental–health facility's policy of not accepting inmates from the ADC. Therefore, we affirm on this point.

## B.  All-White Jury

Jackson argues that the trial court erred in permitting him to be tried by an all–white jury because the number of potential black jurors was not representative of the makeup of the community from which the jury pool was pulled. Jackson contends that there should be

4

no requirement that exclusion of a group be systematic in nature; however, he "acknowledges that this position is not currently reflected in Arkansas case law but [he] is seeking to change the law."

We have repeatedly held that selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial. *Thomas v. State*, 370 Ark. 70, 257 S.W.3d 92 (2007). There is no requirement, however, that the petit jury actually seated in a defendant's case mirror the community and reflect the various distinctive groups in the population. *Id*. It is axiomatic that the State may not deliberately or systematically deny to members of a defendant's race the right to participate, as jurors, in the administration of justice. *Id*. To establish a prima facie violation of the cross-sectional requirement of a jury pool, (1) the allegedly excluded group must be a "distinct" group in the community, (2) the number of members of the excluded group in the venires must be fair and reasonably in proportion to the number in the community, and (3) there must be a systematic exclusion of the group that causes the underrepresentation. *Givens v. State*, 42 Ark. App. 173, 856 S.W.2d 33 (1993).

Defense counsel objected at trial as follows:

> Your Honor, my client has pointed out to me, and after looking, I have to concur with his observation, that of the thirty-five people who have reported, that there was only one African-American in the group that reported. And, for the record, my client is African-American. [T]hat one African-American juror has been excused because he is acquainted closely with my client. That leaves an entirely Caucasian group out here to draw the jury from. I don't believe this group would accurately represent a cross-section of the community. It specifically excludes any African-Americans. And he is entitled to a jury of his peers. And I believe we have some constitutional issues here in connection with there being no African-Americans to select from.
> . . . .

But I do think that when there is [a] complete absence of his race on the panel, that does rise to a constitutional level, because there are none here.

To the extent that Jackson preserved an objection concerning jury selection, jurors were selected based on a drawing from voter-registration records. The supreme court has held that when the jury venire is drawn by random selection, the mere showing that it is not representative of the racial composition of the population will not make a prima facie showing of racial discrimination. *Thomas, supra*. In *Givens, supra*, this court noted that the fact that there were only three black venire persons on the panel from which the jury was selected does not mean that the jury was selected in a way that would not result in a fair cross-section. Jackson cannot show that the State selected venire persons in such a way to exclude blacks from the jury, which he essentially concedes. This court can neither disregard longstanding precedent from the United States Supreme Court nor overrule opinions from the Arkansas Supreme Court.[1] *Flores v. State*, 87 Ark. App. 327, 194 S.W.2d 207 (2004). Therefore, we affirm on this point.

## C.   Rebuttal Witness

Jackson argues that the trial court erred in permitting Tucker to be called as a rebuttal witness when he was in violation of Arkansas Rule of Evidence 615, the sequestration rule.[2] Jackson contends that, after Tucker had testified in the State's case-in-chief, he was permitted to remain inside the courtroom where he heard all of Jackson's testimony. Jackson

---

[1]*See, e.g., Duren v. Missouri*, 439 U.S. 357 (1979).

[2]Arkansas Rule of Evidence 615 provides that, at the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses.

"acknowledges that a long line of cases in Arkansas hold that witnesses should not be excluded to the detriment of a party's case because they fail to comply with Rule 615," but here, the failure to comply with Rule 615 was the State's fault.

Rebuttal evidence is evidence that is offered in reply to new matters, even if it overlaps with the evidence presented in the State's case-in-chief, as long as the testimony is responsive to evidence presented by the defense. *Kincannon v. State*, 85 Ark. App. 279, 151 S.W.3d 8 (2004). The scope of a rebuttal witness's testimony is accorded wide latitude and will not be restricted merely because it could have been presented on direct examination. *Id.* It is within the trial court's discretion whether to admit rebuttal testimony, and the appellate court will not reverse this determination absent an abuse of that discretion. *Id.* The discretion of the trial court in refusing the testimony of a rebuttal witness is narrow even when the witness has violated the rule of sequestration of witnesses and more readily abused by excluding the testimony than by admitting it. *McCorkle v. State*, 270 Ark. 679, 607 S.W.2d 655 (1980). Violation of the sequestration rule through no fault of the party calling the witness is a matter that goes to the credibility of the witness—rather than competency to testify—and the power to exclude the testimony of a witness who has violated the rule should be "rarely exercised." *Ford v. State*, 296 Ark. 8, 19, 753 S.W.2d 258, 263 (1988). The State may not ask questions of a defendant during cross-examination that are "designed to manufacture a rebuttal situation for a presentation of the State's evidence that belonged in its case in chief." *Gordon v. State*, 2012 Ark. 398, at 3.

On direct examination, Jackson testified that, after he was handcuffed by officers, "a

lot more happened" in that he sustained a broken hand and was unrecognizable due to the swelling of his face. On cross-examination, in response to the prosecutor's question about why he ran from the officers, Jackson volunteered that he should have kept running because the officers "beat [him] half to death" behind a building while he was handcuffed. Jackson elaborated—with no objection by defense counsel—that the officers took turns "jumping on [him], kicking [him], beating [him]."

Defense counsel objected to the State's request to call Tucker in rebuttal, and the prosecutor said, "Normally I would not have let him back in the courtroom. But with Mr. Jackson's allegations about this horrendous beating, I feel obligated, because I don't have Vetsch, I don't have Spencer, I don't have anybody else to call, Judge."[3] Defense counsel accused the prosecutor of "set[ting] the stage" for Tucker's rebuttal, but the trial court permitted Tucker to testify.

Jackson first alluded to a beating by the officers on direct examination during presentation of his defense. Tucker's testimony was true rebuttal evidence limited to refuting Jackson's new allegation that he was beaten by the officers while handcuffed. Although we agree with Jackson that Tucker's presence in the courtroom violated Rule 615, we cannot say that the trial court abused its considerable discretion in permitting the State to call Tucker for the purpose of denying Jackson's accusation. Therefore, we affirm on this point as well.

Jackson also argues that the jury should have been instructed that failure to comply

---

[3]There was testimony that neither person was still employed by the Dewitt Police Department; that Spencer lived out of state; and that Vetsch's whereabouts were unknown.

with Rule 615 creates an issue of credibility with respect to Tucker's testimony given that it contradicted Jackson's statements. Jackson, however, did not request or proffer a jury instruction regarding a rebuttal witness's credibility. To preserve an objection to the circuit court's failure to give an instruction, the appellant must make a proffer of the proposed instruction to the judge. *Evans v. State*, 2015 Ark. 240, 464 S.W.3d 916.

Affirmed.

GLOVER and VAUGHT, JJ., agree.

*Wells Law Firm*, by: *Brien G. Saputo*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.