Cite as 2025 Ark. App. 442

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-24-411

| | |
|---|---|
| WAYNE ALLEN WEEKS | Opinion Delivered September 24, 2025 |
| APPELLANT | APPEAL FROM LONOKE COUNTY CIRCUIT COURT |
| V. | [NO. 43CR-23-52] |
| STATE OF ARKANSAS | HONORABLE BARBARA ELMORE, |
| APPELLEE | JUDGE |
| | AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Appellant, Wayne Allen Weeks (hereinafter, "Weeks"), was charged with second-degree sexual assault in violation of Arkansas Code Annotated section 5-14-125 (Repl. 2024) and sexual indecency with a child in violation of Arkansas Code Annotated section 5-14-110 (Repl. 2024). A Lonoke County jury found him guilty of both charges and sentenced him to twenty-six years' imprisonment. Weeks now appeals, arguing that the circuit court abused its discretion in admitting improper rebuttal testimony following the State's cross-examination of him. We find no error and affirm.

Weeks's seventeen-year-old daughter (hereinafter, "MC") testified Weeks began molesting her when she was eleven years old. MC testified that the first time Weeks assaulted her, he stood in the doorway to her room masturbating before walking to her bed and placing his hands underneath her shirt. MC testified she pretended to be asleep, but Weeks pulled

her legs off the bed and put his fingers, and then his face, on her vagina. MC told Weeks to stop and began fighting him; in response, Weeks "threw [her] legs back on the bed and left the room."

MC testified the last time Weeks assaulted her was on June 9, 2022, when she was seventeen years old. MC testified that on that night, Weeks again stood in her doorway masturbating before walking to her bed where he proceeded to take off her underwear, put her legs over his shoulders, and lick her vagina. MC testified Weeks engaged in this behavior numerous times over the years, and while she never saw anything come out of Weeks's penis, she felt it, and it got on her bed. MC testified her bed would be wet, and she would "lay in it" for the rest of the night. MC further testified she used a gray comforter as a blanket on her bed and that there was never a gray blanket in the family room. Sgt. Carla Lucas with the Lonoke County Sheriff's Office testified the sheriff's office took a gray blanket from MC's room as evidence and submitted it to the Arkansas State Crime Laboratory, which revealed Weeks's sperm on the blanket.

Weeks's wife and MC's stepmother, Linda, testified in his defense. Linda testified the family owned a second gray blanket identical to the one taken from MC's bed and that there were times both blankets were used in the family room while watching television. Linda testified the blankets were "mixed up" at times and that the second blanket was not taken by the police for forensic testing.

Weeks testified in his defense, denying MC's allegations of sexual abuse and indecency. Like Linda, Weeks testified there were two identical gray blankets, and that

while he was cooperative with police when they were collecting MC's bedding, it did not cross his mind to tell them about the second gray blanket. On cross-examination, the following colloquy ensued:

[STATE]:     You testified that – I guess let's first talk about the blankets. Your testimony today is that there was two identical blankets that you bought at the same time. One was in [MC's] room and one is in your room; right?

[WEEKS]:     Yes, Ma'am.

[STATE]:     Okay. So did y'all use that blanket as [MC] did? Like – okay. Sorry. [MC] used it as a comforter. She had –

[WEEKS]:     Yes, sir.

[STATE]:     – sheets and she had a comforter. Did y'all use it as a comforter?

[WEEKS]:     Yes, ma'am.

[STATE]:     Okay.

[WEEKS]:     We used it to cover up with. We use it in the front room to cover up with, if she's cold.

. . . .

[STATE]:     Okay. So when the police came into your house on June 10th of '22, you – you were cooperative. You let them take the blankets off her bed. Did you ever mention this other blanket?

[WEEKS]:     No, ma'am. It didn't cross my mind to. I didn't know.

[STATE]:     Okay. So this is the first time we heard about this – this second blanket is today? Yesterday, I guess?

[WEEKS]:     No, ma'am. I told Detective Lucas we had two in my interview.

[STATE]:     You told Detective Lucas you had two blankets?

3

[WEEKS]: Yes, ma'am. I've told – I've told – I mean, I – this is not the first time it's come out that we've had two blankets.

[STATE]: I believe you told Detective Lucas that the camo sheets were y'all's, but you didn't say anything about a blanket.

. . . .

[STATE]: So you talked to Detective Lucas about the sheets. But your testimony today is that you did tell her there was two gray blankets?

[WEEKS]: Yes, ma'am.

The defense rested its case following Weeks's testimony, and the State informed the circuit court it intended to recall Sergeant Lucas to present rebuttal testimony regarding the second gray blanket. Defense counsel objected, and the circuit court heard arguments from both parties. The circuit court overruled Weeks's objection to the rebuttal testimony, and Sergeant Lucas was recalled to testify. Sergeant Lucas confirmed Weeks did not mention the gray blanket on MC's bed during their interview, nor did he mention a second gray blanket.

I. *Standard of Review*

It is within the circuit court's discretion whether to admit rebuttal testimony, and the appellate court will not reverse this determination absent an abuse of discretion. *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996). The discretion of the circuit court in refusing the testimony of a rebuttal witness is narrow and is more readily abused by excluding the testimony than by admitting it. *Jackson v. State*, 2015 Ark. App. 603, at 7, 474 S.W.3d 525, 530.

4

## II. *Discussion*

For his sole point on appeal, Weeks argues the circuit court abused its discretion in allowing rebuttal testimony. Specifically, Weeks asserts the State elicited testimony from him during cross-examination for the purpose of being able to introduce damaging rebuttal evidence. We disagree.

Genuine rebuttal evidence consists of evidence offered in reply to new matters. *Chatman v. State*, 2023 Ark. App. 590, at 6, 680 S.W.3d 805, 808. Evidence can still be categorized as genuine rebuttal evidence even if it overlaps with the evidence-in-chief. *Id.* However, the evidence must be responsive to that which is presented by the defense. *Id.* The scope of a rebuttal witness's testimony is accorded wide latitude. *Id.* It is within the circuit court's discretion whether to admit rebuttal testimony, and the appellate court will not reverse this determination absent an abuse of discretion. *Isbell*, 326 Ark. 17, 931 S.W.2d 74.

In support of his argument, Weeks cites *Kincannon v. State*, 85 Ark. App. 297, 304, 151 S.W.3d 8, 12 (2004), for the proposition that the State "is not allowed to elicit testimony which necessitates rebuttal testimony." That is not what happened here. Sergeant Lucas's rebuttal testimony was largely directed at disproving what Weeks testified to during cross-examination—that he told Sergeant Lucas he had two identical gray blankets. Genuine rebuttal evidence must be "responsive to that which is presented by the defense." *Chatman*, 2023 Ark. App. 590, at 6, 680 S.W.3d at 808. There is no question that Sergeant Lucas's rebuttal testimony was responsive to the new information presented by the defense—the existence of two identical blankets. During the defense's case-in-chief, both Linda and Weeks

offered a new explanation for why Weeks's DNA was on the blanket, and Sergeant Lucas addressed and contradicted that explanation.  In ruling that Sergeant Lucas's testimony would be admitted, the circuit court acknowledged that the evidence was elicited by the defense, not the State, during both Linda's and Weeks's direct examination.  The court considered the matter thoughtfully and ruled that this was proper rebuttal.  We cannot say the court's ruling was an abuse of discretion on this record.  We affirm.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Law Office of Omar F. Greene*, by: *Omar F. Greene*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.