# United States Court of Appeals

## For the Eighth Circuit

_____

Nos. 17-1833/17-2380

_____

Mickey Thomas

*Petitioner - Appellee/Cross-Appellant*

v.

Dexter Payne, Director,
Arkansas Department of Correction

*Respondent - Appellant/Cross-Appellee*

_____

Appeals from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: January 15, 2020
Filed: May 22, 2020

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

GRASZ, Circuit Judge.

Mickey Thomas applied for habeas relief after the Arkansas Supreme Court affirmed his capital-murder death sentence. The district court granted Thomas partial relief. Both Thomas and the State of Arkansas appealed. We affirm in part and reverse in part.

## I. Background

Mickey Thomas was charged with capital murder after allegedly killing two women at the Cornerstone Monument Company in DeQueen, Arkansas. Two lawyers ("Trial Counsel") from the Arkansas Public Defender Commission provided Thomas's legal defense. Ultimately, the jury found Thomas guilty of capital murder and sentenced him to death.

Thomas appealed, but the Arkansas Supreme Court affirmed both his conviction and sentence. *Thomas v. State*, 257 S.W.3d 92, 104 (Ark. 2007).

Thomas then filed a petition for postconviction relief under Arkansas Rule of Criminal Procedure 37.5. The petition claimed, among other things, that Trial Counsel provided ineffective assistance by "failing to properly investigate the underlying allegations[,] . . . . failing to properly investigate and present mitigation evidence[,] . . . . failing to properly investigate and present mental health issues[,] . . . . [and] informing the Jury that [Thomas] was guilty or that [he] was going to prison." In addition, Thomas claimed the trial court violated the Sixth and Fourteenth Amendments by refusing to draw a jury from Arkansas's more expansive list of registered drivers instead of its list of registered voters. The Circuit Court of Sevier County, after reviewing Thomas's Rule 37 petition, denied relief. For simplicity's sake, we will refer to the Circuit Court of Sevier County as the "Rule 37 court."

Thomas appealed the denial of his Rule 37 petition to the Arkansas Supreme Court. In his appeal, Thomas raised only two ineffective-assistance claims. First, he contended Trial Counsel should have objected to the trial court's change of venue.

And second, he argued Trial Counsel should have introduced additional witness testimony. His appeal omitted any discussion (relevant for our purposes) of Trial Counsel's investigation and presentation of exculpatory, mitigating, or mental-health evidence. Nor did Thomas continue to argue that Trial Counsel provided ineffective assistance by conceding guilt. The Arkansas Supreme Court affirmed the denial of Thomas's Rule 37 petition. *Thomas v. State*, 431 S.W.3d 923, 930 (Ark. 2014).

Turning to federal courts, Thomas then applied for relief under 28 U.S.C. § 2254 in the United States District Court for the Western District of Arkansas. Thomas attempted to renew his claims that Trial Counsel provided ineffective assistance by failing to investigate and present exculpatory, mitigating, and mental-health evidence.[1] He also introduced new claims; for example, that Trial Counsel provided ineffective assistance by not effectively moving for an expanded jury pool.[2]

As the district court pointed out, the procedural default rule was a major hurdle for both Thomas's guilt-and-penalty ineffective-assistance claims and his jury-pool ineffective-assistance claim. The procedural default rule, the court explained, typically forbids introducing new claims and resurrecting old, previously-abandoned claims in federal habeas applications.

---

[1]Specifically, in Claim 10-1, Thomas argues that Trial Counsel was ineffective at presenting a mitigation case. We will refer to this claim as the "penalty-phase ineffective-assistance claim." In Claim 1, Thomas argues that Trial Counsel was ineffective during the guilt phase of trial. We will refer to this claim — excepting sub-Claim 1-1-5 (see note 2 below) as the "guilt-phase ineffective-assistance claim." When considering these two claims together, we will refer to them as the "guilt-and-penalty ineffective-assistance claims."

[2]This sub-Claim, numbered 1-1-5 in Thomas's application, we will refer to as the "jury-pool ineffective-assistance claim."

If Thomas's claims were procedurally defaulted, he could only bring them before a federal court if he "demonstrate[d] cause for the default and actual prejudice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). According to Thomas, his lawyer in the Rule 37 proceeding ("Rule 37 Counsel") was ineffective, which in turn caused the procedural default. Because Thomas thought his underlying claim was meritorious, he believed Rule 37 Counsel's ineffectiveness prejudiced him. Thus, Thomas maintained, he could demonstrate both cause and prejudice, which would permit a federal court to consider his procedurally defaulted claims.

Whether Thomas could demonstrate cause depended on *when* he experienced procedural default. An Arkansas prisoner applying for federal habeas relief can "demonstrate cause for the default" by proving Rule 37 Counsel's ineffective assistance resulted in the failure to raise an ineffective-assistance-at-trial claim in the initial Rule 37 proceeding. *See Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013) (following *Trevino v. Thaler*, 569 U.S. 413 (2013)). But an applicant *cannot* demonstrate cause for default by proving ineffective assistance resulted in the failure to *appeal* a Rule 37 court's ruling on an ineffective-assistance-at-trial claim. *Martinez v. Ryan*, 566 U.S. 1, 16 (2012). Thomas's argument — that Rule 37 Counsel's ineffectiveness caused the procedural default — therefore turned on whether the procedural default was triggered at the initial Rule 37 proceeding or on its subsequent appeal.

The parties briefed and argued their respective positions on procedural default before the district court, which concluded procedural default was triggered at the initial Rule 37 proceeding. As the district court explained, while "evidence presented at the [Rule 37] hearing possibly *skimmed* the issues," Thomas's Rule 37 petition set forth only "bare bones, boilerplate allegations." This, when coupled with the Rule 37 court's finding that Thomas "introduced no evidence in support of [his] claims," led the district court to hold that Thomas never really claimed ineffective-assistance

-4-

for guilt-and-penalty investigation and presentation in the first place. Therefore, the district court concluded, the failure to raise the guilt-and-penalty ineffective-assistance claims *in the first instance* (and not the failure to appeal their rejection) triggered the procedural default.

Under the district court's analysis, if Thomas could show Rule 37 Counsel provided ineffective assistance by failing to properly raise the guilt-and-penalty ineffective-assistance claims, and Thomas was prejudiced thereby, it could excuse procedural default. Citing the Supreme Court's *Trevino* decision, the district court provided Thomas an opportunity to demonstrate cause and prejudice by expanding the record and holding a hearing. *See* 569 U.S. at 429. But the district court only allowed Thomas to argue some of his procedurally-defaulted claims at the hearing. Many of his claims, the district court found, were not "potentially meritorious," including the jury-pool ineffective-assistance claim. The district court therefore refused to consider them.

During the hearing, Thomas introduced mitigation and mental-health evidence not previously introduced at the trial or the Rule 37 proceedings. The district court, after viewing this evidence and extensive live testimony, concluded that Thomas was not prejudiced by Trial Counsel's alleged shortcomings during the trial's guilt phase. However, it found that Trial Counsel was "dysfunctional and disjointed" and "failed to conduct a thorough investigation with respect to mitigation." Given the evidence introduced at the federal hearing, the district court found a "reasonable probability" the jury would have sentenced Thomas to life imprisonment rather than death, if only Trial Counsel had conducted a constitutionally adequate mitigation investigation and presentation.

The district court also found Thomas's Rule 37 Counsel ineffective. It concluded Rule 37 Counsel's ineffectiveness caused the procedural default by failing

to raise the guilt-and-penalty ineffective-assistance claims in the initial Rule 37 proceedings. And because Trial Counsel provided ineffective assistance with respect to Thomas's mitigation case, Rule 37 Counsel's failure prejudiced Thomas. Therefore, the district court held, Thomas had shown both cause and prejudice for his failure to raise the penalty-phase ineffective-assistance claim; he could bring it in federal court. Because Trial Counsel *was* ineffective at mitigation, the court continued, relief was appropriate. The state must either re-try the penalty phase of Thomas's trial, or else it must stipulate to a life sentence.

Both Thomas and the state appeal the district court's order. Thomas maintains that Trial Counsel was ineffective during both the guilt phase of the trial and the penalty phase. He also appeals the district court's rejection of his jury-pool ineffective-assistance claim, requesting a federal hearing. Finally, he asks for a hearing on a dismissed guilt-phase sub-claim in light of the Supreme Court's recent *McCoy v. Louisiana* decision. 138 S. Ct. 1500 (2018). The state resists each of these arguments and further maintains that Trial Counsel provided constitutionally adequate assistance in its investigation and presentation of Thomas's mitigation case.

## II. Analysis

### A. Guilt-and-Penalty Ineffective Assistance

The district court found that Trial Counsel's inadequate preparation for the penalty phase of the trial deprived Thomas of his Sixth Amendment rights. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). "On appeal from a district court's grant of a habeas petition, we review the district court's findings of fact for

-6-

clear error, and its conclusions of law *de novo*." *Escobedo v. Lund*, 760 F.3d 863, 868 (8th Cir. 2014).

We begin our analysis with the issue of procedural default.[3] Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez*, 566 U.S. at 9. In such cases, the state court's judgment "rests on independent and adequate state procedural grounds," and we therefore cannot grant relief. *Coleman*, 501 U.S. at 730; *see also* 28 U.S.C. § 2254(a) (federal courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").[4]

In limited circumstances, however, procedural default can be excused. If "the prisoner can demonstrate cause for the default and actual prejudice as a result of the

---

[3]The state did not press the procedural default issue on appeal. But the parties knew procedural default was in play and had opportunity to present their positions. We can therefore address the issue. *See Dansby v. Hobbs*, 766 F.3d 809, 824 (8th Cir. 2014).

[4]In Thomas's case, the application of the procedural default rule intersects with the exhaustion requirement mentioned in 28 U.S.C. § 2254(b)(1)(A). If the state "court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . . there is a procedural default for purposes of federal habeas." *Coleman*, 501 U.S. at 735 n.1. And "[a] habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Id.* at 732 (citing 28 U.S.C. § 2254(b)). Thus, we focus on procedural default, and not exhaustion, in our analysis.

alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," then federal courts may consider the procedurally defaulted claim. *Coleman*, 501 U.S. at 750.

The district court found Thomas's guilt-and-penalty ineffective-assistance claims were procedurally defaulted. And in this respect, we agree with the district court. Where we depart from the district court, however, is *when* Thomas procedurally defaulted his claims. This difference ultimately determines whether the procedural default can be excused.

According to the district court, Thomas failed to properly raise his guilt-and-penalty ineffective-assistance claims in his initial Rule 37 proceeding. In effect, the district court concluded, Thomas never actually raised those claims to the Rule 37 court in the first place. Relying on our *Flieger v. Delo* decision, the district court explained that Thomas's failure to present both the factual and legal premises of the guilt-and-penalty ineffective-assistance claims at the initial Rule 37 proceeding led to procedural default. 16 F.3d 878, 884–85 (8th Cir. 1994).

The district court erred in its analysis. Procedural default occurs when "a state court decline[s] to hear [a claim] because the prisoner failed to abide by a state procedural rule." *Martinez*, 566 U.S. at 9. But the Rule 37 court did *not* decline to hear Thomas's guilt-and-penalty ineffective-assistance claims. Rather, the Rule 37 court clearly ruled on the merits of the claim: it found that Thomas's "[trial] attorneys did in fact adequately investigate the issues petitioner cites." And the Rule 37 court's statement that Thomas "introduced no evidence" to support his claims does not

indicate a failure to "abide by a state procedural rule." *Id.* The lack of evidence simply speaks to the weakness of Thomas's claims on the merits.[5]

An analysis of *Flieger* illustrates the district court's mistake. In *Flieger*, the applicant made a generic ineffective-assistance claim in his initial state postconviction proceeding, coupled with a few specific allegations of ineffective assistance. 16 F.3d at 884–85. After the state court denied postconviction relief, the applicant raised *new* ineffective-assistance allegations to the federal district court that he had *not* previously raised before the state court. *Id.* The federal district court rejected these claims as procedurally barred. *Id.* On appeal, the applicant claimed his purportedly defaulted allegations were implicit in the original, generic ineffective-assistance claim. *Id.* We disagreed. The applicant's generic ineffective-assistance claim in state court did not "immunize[] his federal habeas claim's specific variations from the effects of the state's procedural requirements." *Id.* at 885. Without presenting "both the factual and legal premises" of his claims to the state court, the applicant could not expect to avoid procedural default. *Id.* at 884 (emphasis omitted).

---

[5]By concluding that Thomas never adequately raised his guilt-and-penalty ineffective-assistance claims in the initial Rule 37 proceeding, the district court avoided applying the deferential standards provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254(d) (imposing deferential standards when an applicant's claim was previously "adjudicated on the merits in State court"). It appears that § 2254(d) would, in fact, apply given the facts outlined above. *See Johnson v. Williams*, 568 U.S. 289, 293 (2013) (requiring federal courts to presume, absent contrary evidence, that a denial of relief is made "on the merits"). But because we can resolve the ultimate issue of Thomas's guilt-and-penalty ineffective-assistance claims without invoking these deferential standards, we will forgo such an analysis.

In other words, the state court in *Flieger* never ruled on the applicant's specific ineffective-assistance claim, because the applicant never presented the specific claim in the first place. Compare that with Thomas's case. Thomas presented the Rule 37 court with ten different, specific, ineffective-assistance-at-trial allegations. In particular, he claimed "[t]rial counsel was ineffective for failing to properly investigate the underlying allegations[,] . . . . failing to properly investigate and present mitigation evidence[,] . . . . [and] failing to properly investigate and present mental health issues." And Rule 37 Counsel specifically questioned Trial Counsel about the scope of the mitigation and mental health investigation. He asked about the records Trial Counsel obtained and failed to obtain, the scope of the investigation into Thomas's background, and the results of Thomas's mental health and competency evaluations. Trial Counsel also testified about the number and identity of the witnesses called during Thomas's mitigation case.[6] In short, the specific ineffective-assistance-at-trial allegations were presented to the Rule 37 court, and the court provided a determination on the merits. The weakness of support for the claims in the Rule 37 petition and hearing has no bearing on whether the claims were actually presented, much less whether the state court's "judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).

Thus, no procedural default was triggered in the initial Rule 37 proceedings. However, procedural default *was* triggered by Thomas's failure to appeal the Rule 37 court's ruling on the guilt-and-penalty ineffective-assistance claims. *Fink v. State*, 658 S.W.2d 359, 360 (Ark. 1983) ("Issues not argued on appeal are considered abandoned."). To reiterate: it was not Thomas's *failure to raise* the guilt-and-penalty

---

[6]We do not question the district court's finding that the Rule 37 petition contained "bare bones, boilerplate allegations," or that Rule 37 Counsel only "skimmed" the issues at the Rule 37 hearing.

ineffective-assistance claims that triggered procedural default, because he did, in fact, raise them.  Rather, it was his *failure to appeal* that resulted in the default.

Because the guilt-and-penalty ineffective-assistance claims were procedurally defaulted, we will only consider them if Thomas can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  And this is why the timing of procedural default matters.  Under the Supreme Court's *Trevino* decision, postconviction counsel's "ineffectiveness, if proved, establishes 'cause for any procedural default [Thomas] may have committed in not presenting these claims to the [Arkansas] courts *in the first instance.*'"  *Sasser*, 735 F.3d at 853 (emphasis added) (quoting *Williams v. Taylor*, 529 U.S. 420, 444 (2000)).  But the *Trevino* rule "does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review."  *Martinez*, 566 U.S. at 16 (emphasis added).  Because Thomas's procedural default occurred by *failing to appeal* the Rule 37 court's ruling, Thomas's Rule 37 Counsel's ineffectiveness, if proven, does not constitute cause for the default.  Nor can Thomas show that, without a federal hearing, a fundamental miscarriage of justice would occur; to do so, he would have to establish by a preponderance of the evidence that "no reasonable juror would have found [him] guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  And given the strength of the state's case against Thomas, we remain sufficiently confident in the result of his trial.  *Cf. House v. Bell*, 547 U.S. 518, 537 (2006).  We therefore conclude that habeas relief *cannot* be granted on his guilt-and-penalty ineffective-assistance claims.  *See* 28 U.S.C. § 2254(a).[7]

---

[7]We therefore need not address how *Trevino* interacts with AEDPA's procedural hurdle forbidding federal courts from holding hearings in most

## B. Jury-Pool Ineffective Assistance

We next consider Thomas's argument that Trial Counsel was ineffective by failing to promptly and adequately move for an expanded jury pool. This claim parallels one raised by Thomas in the Rule 37 proceeding: that the trial court violated the Sixth and Fourteenth Amendments by failing to draw the jury from an expanded jury pool, as Arkansas law permits. *See* Ark. Code Ann. § 16-32-301(a). But insofar as Thomas failed to raise "both the factual and legal premises" of his jury-pool ineffective-assistance claim to the Rule 37 court, the claim is procedurally defaulted. *Flieger*, 16 F.3d at 884 (emphasis omitted); *Frazier v. State*, 482 S.W.3d 305, 309 (Ark. 2016) ("This court will not consider new matters not raised in the Rule 37 petition for the first time on appeal, unless they are so fundamental as to void the conviction.").

As discussed above, Thomas's procedural default can be excused if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Under *Trevino* and *Sasser*, ineffective assistance of Arkansas postconviction relief counsel, if

---

circumstances when an applicant fails to develop a claim in state court. *See* 28 U.S.C. § 2254(e)(2). We simply note the tension in the case law revealed by the district court's decision to hold a *Trevino* hearing. *Compare Holland v. Jackson*, 542 U.S. 649, 653 (2004) ("Attorney negligence . . . is chargeable to the client and precludes relief unless the conditions of § 2254(e)(2) are satisfied."), *and Williams v. Norris*, 576 F.3d 850, 860–63 (8th Cir. 2009) (explaining that it is "reversible error" to hold a hearing for a § 2254 applicant's claims that he failed to raise in state court), *with Sasser*, 735 F.3d at 854–55 (indicating that, under *Trevino*, counsel's ineffectiveness permits an applicant to *avoid* the requirements of § 2254(e)(2)).

-12-

proven, can constitute cause for failing to raise an ineffective-assistance-at-trial claim in an initial Rule 37 proceeding. *Sasser*, 735 F.3d at 853.

According to Thomas, *Trevino* entitles him to a federal hearing on his procedurally defaulted (but potentially excused) jury-pool ineffective-assistance claim. He is mistaken. A procedurally defaulted claim must be "substantial" for the default to be excused — that is, the claim must have "some merit." *Martinez*, 566 U.S. at 14. A federal court may "evaluate whether claims of ineffective-assistance are 'substantial' or 'potentially meritorious'" when determining whether a hearing is warranted. *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (explaining that "the decision to grant an evidentiary hearing" remains within the "sound discretion of district courts"). Thus, even if an applicant alleges that his counsel's ineffectiveness caused him to omit an ineffective-assistance-at-trial claim in his initial-review postconviction proceeding, a district court may still deny a hearing if it finds the claim not "substantial" or "potentially meritorious." *Dansby*, 766 F.3d at 834. And that's what the district court did in Thomas's case.

To see why Thomas's claim was not potentially meritorious, consider what Thomas must prove for his claim to succeed. To show cause for procedural default, he must show that Rule 37 Counsel provided ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). Doing so would require showing that, by failing to raise a jury-pool ineffective-assistance claim, Rule 37 Counsel fell below the constitutional standard of competence and prejudice resulted. *Id.* at 688, 694. To show prejudice, Thomas would have to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the [Rule 37] proceeding would have been different." *Id.* at 694. Showing prejudice would thus require establishing the merits of the underlying jury-pool ineffective-assistance claim. That is, Thomas

would have to establish that Trial Counsel fell below the constitutional standard of competence and — again — prejudice resulted. *Id.*

So, at bottom, Thomas must establish a reasonable probability that, but for Trial Counsel's failure to properly move for an expanded jury pool, the jury would not have sentenced him to death. *See id.* He assumes the increased availability of black jurors would have resulted in a jury less inclined to impose the death sentence. But such assumptions have no place in a *Strickland* prejudice inquiry. Rather, when reviewing prejudice, we must consider "the totality of the evidence before the judge or jury." *Id.* at 695. In this case, the evidence presented before *either* jury — Thomas's actual jury or his desired, hypothetical one — is the same. *See id.* at 695–96 ("Some of the factual findings will have been unaffected by the errors . . . . Taking the unaffected findings as a given . . . a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."). And as the district court rightly reported, there was "overwhelming evidence against Thomas on the elements of capital murder and the aggravating factors supporting the death sentence."

At the same time, our prejudice inquiry "should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695. The inquiry "should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." *Id.* And even if these factors "may actually have entered into counsel's selection of strategies and, to that limited extent, may thus affect the performance inquiry, they are irrelevant to the prejudice inquiry." *Id.* Thomas is therefore asking us to make the assumption forbidden by *Strickland*: that he was prejudiced by a jury who, by virtue of the pool they were drawn from, had a propensity toward harshness.

Thomas, like all criminal defendants, was entitled to a jury "selected from a fair cross section of the community." *Duren v. Missouri*, 439 U.S. 357, 359 (1979). But as the Arkansas Supreme Court pointed out, Thomas "failed to prove any systematic exclusion of black people from the jury-selection process." *Thomas*, 257 S.W.3d at 99. We have previously held that a petitioner's failure to show an unconstitutional jury selection process "precludes a finding of prejudice springing from ineffective assistance." *Wharton-El v. Nix*, 38 F.3d 372, 377 (8th Cir. 1994); *see also Phea v. Benson*, 95 F.3d 660, 662 (8th Cir. 1996) ("[B]ecause [applicant] has not demonstrated that the composition of the jury violated the requirements of the Sixth Amendment, counsel was not ineffective for failing to object."). The same principle applies here: because Thomas got a constitutionally adequate jury, he was not prejudiced.[8] The district court did not err in denying Thomas a hearing for his jury-pool ineffective-assistance claim.

## C. *McCoy* Sixth Amendment Violation

Finally, Thomas contends Trial Counsel violated the Sixth Amendment by telling the jury, in his opening argument, that Thomas had killed the victims and was "going to the penitentiary." Under *McCoy v. Louisiana*, Thomas explains, a criminal defendant has the right to veto his attorney's decision to make such concessions at

---

[8]Moreover, even if his argument were permissible, Thomas would also have to establish a probability that the trial court would have granted a motion to expand the jury pool. We doubt he could meet this burden. Trial Counsel *did*, in fact, move for an expanded jury pool, but was unable to provide demographic data supporting the argument until trial was underway. Yet the trial court recognized the force of the argument before denying the motion. *See Thomas*, 257 S.W.3d at 99 ("[T]he trial court did not err by denying [Thomas's] motion to expand the jury pool.").

trial. 138 S. Ct. at 1505. While Thomas's federal habeas application alleged ineffective assistance and structural error based on Trial Counsel's concessions, *McCoy* was not decided until after the district court denied relief on this claim. Thomas now asks us to revisit his concession-based claim in light of *McCoy* and order a hearing so he can prove Trial Counsel made concessions against his expressed wishes.

The parties debate whether and to what extent Thomas raised this claim in state court, and in turn dispute whether we can order a hearing. Thomas raised a concession-based ineffective-assistance claim in his Rule 37 petition, and the Rule 37 court denied relief. Thomas did not appeal this decision. As such, if Thomas's present claim is essentially the same claim as the one he raised in state court (even in light of the *McCoy* decision), we cannot order a hearing or grant relief. By failing to appeal the Rule 37 court's decision, the claim is procedurally defaulted and cannot be excused under *Trevino*. *Martinez*, 566 U.S. at 16 (refusing to apply the *Trevino* rule to appeals from initial-review collateral proceedings). Moreover, the Rule 37 court's adjudication of the concession-based ineffective-assistance claim on the merits — i.e., that Trial Counsel's concessions did not violate *Strickland* — was reasonable and is therefore unreviewable. *See* 28 U.S.C. § 2254(d) (forbidding federal habeas relief on claims reasonably adjudicated on the merits by a state court); *see also Greene v. Fisher*, 565 U.S. 34, 39 (2011) (explaining that the reasonableness of a state court's legal analysis under § 2254(d)(1) is typically determined by the then-existing Supreme Court precedent); *cf. Holder v. United States*, 721 F.3d 979, 988–90 (8th Cir. 2013) (finding no *Strickland* violation when trial counsel strategically conceded "all-but-indisputable" act requirements).

To avoid this result, Thomas says he never brought the present claim before the Rule 37 court in the first place. In his federal habeas application, Thomas explains,

he argued that Trial Counsel's concessions constituted "structural error," triggering a presumption of prejudice and a violation of the Sixth Amendment. It was precisely this kind of presumptively-prejudicial structural error that the Supreme Court would later identify in *McCoy*. 138 S. Ct. at 1511. But no such presumptively-prejudicial structural error ("*McCoy*-type claim") was alleged in the initial Rule 37 petition. Rather, the Rule 37 petition simply accused Trial Counsel of violating *Strickland* when informing the jury that Thomas was guilty and was going to prison. The two claims, Thomas maintains, are different. And by failing to raise the *McCoy*-type claim in the Rule 37 petition, the *McCoy*-type claim was procedurally defaulted *ab initio*. Under *Trevino*, Thomas reminds us, postconviction counsel's "ineffectiveness, if proved, establishes 'cause for any procedural default [Thomas] may have committed in not presenting [this] claim[] to the [Arkansas] courts *in the first instance*." *Sasser*, 735 F.3d at 853 (emphasis added) (quoting *Williams*, 529 U.S. at 444). A hearing is therefore necessary, Thomas argues, so he can establish cause for procedural default.

But even if we assume many key premises of Thomas's argument,[9] he is not entitled to a hearing. Ultimately, for us to excuse procedural default, Thomas must show "actual prejudice." *See Coleman*, 501 U.S. at 750. In other words, he must show a reasonable probability that, but for Rule 37 Counsel's failure to raise the

---

[9]We may assume, without deciding or commenting on the merits of, the following propositions: (1) Thomas's present claim is legally and factually distinct from the one raised in state court; (2) Rule 37 Counsel fell below the constitutional standard of competence by failing to present this claim in state court; (3) a *McCoy*-type claim does not require a showing of *Strickland* prejudice; (4) the restrictions on habeas hearings articulated in § 2254(e)(2) do not apply to Thomas's present claim; and (5) Trial Counsel actually violated the principles articulated in *McCoy* by conceding guilt against Thomas's expressed wishes.

*McCoy*-type claim in the Rule 37 petition, he would have been granted relief by the Rule 37 court. *See Fischetti v. Johnson*, 384 F.3d 140, 155 (3d Cir. 2004) (applying *Strickland*'s prejudice standard in a default-by-ineffective-assistance "actual prejudice" inquiry); *Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997) (calling *Strickland*'s prejudice standard an "actual prejudice" standard); *see also Sawyer v. Whitley*, 505 U.S. 333, 345 & n.13 (1992) (analogizing *Coleman*'s "actual prejudice" standard to *Strickland*'s prejudice standard).

Thomas cannot meet this burden. At the time of the Rule 37 hearing, *McCoy* had not yet been decided.[10] The leading case then was *Florida v. Nixon*, which held that trial counsel's concessions do not constitute presumptively-prejudicial structural error when the defendant is indifferent about trial strategy. 543 U.S. 175, 179, 191 (2004) ("Counsel therefore may reasonably decide to focus on the trial's penalty phase, at which time counsel's mission is to persuade the trier that his client's life should be spared."); *see also Malcom v. Houston*, 518 F.3d 624, 627 (8th Cir. 2008) (explaining that we "rarely presume prejudice in ineffective assistance of counsel cases"). And, in Thomas's case, Trial Counsel had notes from the eve of trial indicating that Thomas had no problem admitting he was guilty of "something but not capital murder."

It is highly unlikely that the Rule 37 court would have found Trial Counsel's concessions one of the "rare" instances of presumptively-prejudicial structural error, especially in light the Supreme Court's *Nixon* decision. *See Malcom*, 518 F.3d at 627. Rather, under *Nixon*, the Rule 37 court would not have presumed prejudice; it

---

[10]Thomas does not argue that *McCoy* applies retroactively; he simply argues the principles underlying the *McCoy* decision were in place at the time of his trial and should be applied to his case.

would have applied the *Stickland* standard, which would require Thomas to establish both that Trial Counsel, by conceding guilt, fell below the constitutional standard of competence and that prejudice resulted. *Nixon*, 543 U.S. at 192 (requiring application of *Strickland*); *see also State v. Fudge*, 206 S.W.3d 850, 858 n.2 (Ark. 2005) ("There is no presumption of deficiency or prejudice under *Strickland* even to a concession of guilt on the capital-murder charge itself[.]"). And it is equally unlikely that the Rule 37 court would have found Trial Counsel's concessions violated *Strickland*. After all, as the Rule 37 court held in Thomas's similar (but purportedly distinct) concession-based ineffective-assistance claim, Trial Counsel's decision to concede guilt was a tactical decision made in the face of overwhelming evidence, and was neither "grounds for finding counsel to be ineffective" nor prejudicial. We therefore do not find it likely that the Rule 37 court would have granted relief on the *McCoy*-type claim.

To summarize: Thomas's *McCoy*-type claim is procedurally defaulted. We cannot excuse the default, because the default can only be excused if Thomas can establish a reasonable probability that relief would have been granted had Rule 37 Counsel raised the claim. Under the then-existing *Nixon* framework, it is not reasonably probable that relief would have been granted. So even if Thomas could prove Trial Counsel violated *McCoy*, he still would not be entitled to relief. As such, a federal hearing is not appropriate. *Schriro*, 550 U.S. at 474.

## III. Conclusion

Thomas's procedural default on his guilt-and-penalty ineffective-assistance claims cannot be excused. Therefore we reverse the district court's grant of relief with respect to his penalty-phase ineffective-assistance claim, and we affirm the district court's denial of relief with respect to his guilt-phase ineffective-assistance

claim.  Likewise, we affirm the district court's denial of a hearing and of relief for Thomas's jury-pool ineffective-assistance claim. Finally, we reject Thomas's request for a hearing under *McCoy*.

_____